[L.A. No. 29815. In Bank. Aug. 5, 1971.]

In re ARTHUR VERNON JONES on Disbarment.

## COUNSEL

Richard W. Petherbridge and Robert H. Green for Petitioner.

F. LaMar Forshee, Herbert M. Rosenthal and Ronald W. Stovitz for Respondent.

## OPINION

**THE COURT**—Respondent, a member of the State Bar since his admission to practice in 1931, was convicted in April 1966 of subornation of perjury (Pen. Code, § 127), and offering false evidence (Pen. Code, § 132). Motions for new trial and probation were denied and he was sentenced to state prison on each count for the term prescribed by law, sentences to run con-

currently.[1] Convictions were affirmed.[2] He was incarcerated at the California Institution for Men at Chino from January 3, 1968, to January 3, 1969; served 14 months thereafter on parole; and was discharged from parole in 1970.

On June 29, 1966, respondent was suspended from the practice of law until further order of this court. On June 19, 1968, this court referred the matter to the State Bar for hearing, report and recommendation as to the nature and extent of discipline to be imposed (Bus. & Prof. Code, §§ 6101, 6102).[3] Respondent, represented by his trial counsel, continued to maintain his innocence and offered evidence in mitigation, including so-called "newly-discovered" evidence (Special Exhibit A).[4] The Disciplinary Board, with minor changes, adopted the special administrative committee's findings[5] that there was no mitigating evidence and that there was no prior disciplinary record. By a 10-to-5 vote it adopted the recommendation of disbarment.

The dissenting board members thought that the degree of discipline recommended was too severe. Four of them thought that the matter should be re-referred to the committee to consider Special Exhibit A and the matters referred to during oral argument by respondent and his counsel before the board. Three of the majority members requested that the record show their vote was based upon the conclusion that under the terms of the reference guilt is conclusively presumed and therefore the findings and proposed discipline are justified by the record; that if there is reasonable doubt as to his guilt, arising from the "newly-discovered" evidence or

---

[1]Violation of Penal Code section 127 is punishable by imprisonment for not less than one nor more than 14 years (§ 126); violation of section 132 is punishable by imprisonment for not less than six months nor more than five years (§§ 18, 18a).

[2]*People* v. *Jones* (1967) 254 Cal.App.2d 200 [62 Cal.Rptr. 304]; petition for hearing denied Nov. 1, 1967; certiorari denied (1968) 390 U.S. 980 [19 L.Ed.2d 1278, 88 S.Ct. 1101]; Orange County Action No. C-16268, judgment entered April 23, 1966.

[3]Section 6101 provides that conviction of a crime involving moral turpitude constitutes a cause for disbarment or suspension; that the record of conviction shall be conclusive evidence of guilt of the crime of which convicted; that the proceedings to disbar or suspend shall be commenced by this court upon the receipt of certified copy of the record of conviction. Section 6102 states the procedure to be followed.

[4]State Bar Misc. 3063, Orange 82.

[5]The special administrative committee appointed by the State Bar found that there was nothing in the record by way of mitigation; that although respondent maintained that he was innocent the committee felt bound by the determination in the criminal proceedings; that since he denied commission of the crimes he showed "no remorse" with respect to them; that he anticipated leniency from the committee because of his belief that it would concur in his assertion that he was wrongfully convicted; and that although an individual was victimized by reason of the false evidence produced in the civil case he offered no evidence of attempts to make restitution; and that he was presently a defendant in a suit brought by the victim seeking damages by reason of the false letter and perjured testimony. The board struck this finding and made a general finding that "The record reflects no mitigating circumstances."

otherwise, this should be the subject of proceedings in an appropriate *court*, not before the State Bar, and that the mere possibility of such other proceedings should not affect the action of the board.

The reference report, transcripts and recommendation were filed in this court on August 21, 1970. On September 21 respondent requested an extension of time within which to file "petition for review," stating that the attorney who had represented him on the appeal (and in the disciplinary proceedings) would not return from Europe until after October 21, 1970, —the last day of the 60-day period provided by rule 59, California Rules of Court, for such review. He was advised by the clerk that the 30-day period under rule 951(d) (Rules for Disciplinary Proceedings on Attorney's Conviction of Crime) was applicable and that "without intending to indicate that the thirty-day requirement in rule 951(d) is or is not jurisdictional" if he planned on filing objections he should do so promptly. He secured new counsel and filed objections and supporting brief on October 15, 1970.

■ *Questions*: First. *Is the 30-day period prescribed by rule 951(d) jurisdictional?*

*No.* Rule 951, California Rules of Court, was adopted pursuant to section 6102, subdivision (e), Business and Professions Code, for referral proceedings following conviction of a crime involving moral turpitude. It provides that within 30 days after filing of the report and recommendation by the State Bar the attorney *may file* with the court written objections thereto, with a supporting brief. ■ Rule 59, adopted pursuant to section 6083 relating to original disciplinary proceedings provides that a petition to review a decision of the State Bar recommending disbarment or suspension *shall be filed within 60 days* after the decision complained of has been filed with this court. That period is not jurisdictional. Section 6084 provides that when no petition has been filed this court "shall make such order as it deems proper in the circumstances."[6] Rule 45(e) expressly states the power of the court to relieve from default for failure to comply with the rules. (See generally 1 Witkin, Cal. Procedure (2d ed. 1970) pp. 397-403.) ■ Respondent was apparently confused as to the appropriate rule; the matter has been pending since June 29, 1966; all the requisite procedures have been followed with the exception of strict adherence to rule 951(d); objections were filed within 55 days. It is proper under the circumstances to waive any default in the timely filing of the objections of respondent.

---

[6]*Bordner* v. *State Bar* (1933) 218 Cal. 580 [24 P.2d 459], and *In re McKenna* (1940) 16 Cal.2d 610 [107 P.2d 258], dismissing petitions for review filed more than 60 days after the State Bar filed its recommendations in original proceedings (rule 59) were decided prior to the 1957 amendment to section 6081. Theretofore this section provided that when the 60-day period was permitted to elapse the Supreme Court "shall" make its order either "striking the name of the person from the roll of attorneys" or "suspending him for a period mentioned in the decision."

 Second: *Is the recommendation for imposition of discipline by this court premature?*

*No:* The "newly-discovered" evidence (hereinafter discussed) was presented to and was fully considered by the special administrative committee. Respondent was given continuances to call witnesses and to initiate whatever legal steps he desired. He was advised by the Disciplinary Board of the committee's recommendation, was advised that he could file an application for the presentation of additional evidence or for a hearing de novo or both, and was requested to file a statement in support of or in opposition to the report of the committee. In seeking a hearing and a continuance before the board he made no request for a re-referral or for a hearing de novo and he presented no evidence. He did not file a statement regarding the committee report. His counsel discussed various legal procedures for attacking a criminal conviction. Respondent's counsel subsequently concluded that the only procedure available was an application for a pardon. His application dated February 12, 1970, was not successful.[7]

The facts upon which the convictions were based are stated in *People* v. *Jones, supra,* 254 Cal.App.2d 200, 205-212. It is sufficient to note here that respondent represented Laurence Boothe and Donald Franklin, a real estate broker, in civil actions consolidated for trial against William Kachig for damages for breach of an agreement to exchange real estate and for recovery of commissions, respectively. In issue was whether a binding agreement had been reached. Respondent offered into evidence the original or ribbon copy of a typewritten letter which purported to have been written, dated and signed on April 22, 1962, by Boothe and which stated his irrevocable agreement" to Kachig's terms and conditions.[8] The only other written

---

[7]The Governor's assistant legal affairs secretary advised counsel on May 7, 1971, that the request for a pardon based upon a claim of innocence had been carefully reviewed; that the letter "recently produced by Mr. Boothe does not mitigate the substantial evidence introduced at the trial that Mr. Jones offered what he knew to be a false document and, in addition, solicited Boothe to testify that it was authentic" and, accordingly, "The Governor will take no action on your request."

[8]"Laurence Boothe
2016 Bayside Drive
Corona del Mar, California
Mail: P. O. Box 35
April 22, 1962

Donald V. Franklin, Realtor
3250 East Coast Highway
Corona del Mar, California

Dear Mr. Franklin:

I'm sorry I was not at home when Mr. Sisko brought the Exchange Agreement to me for my reinitialing. This letter, however, constitutes my

agreements offered were an exchange agreement signed by Kachig and unilaterally altered by Boothe on April 2, 1962, and escrow instructions written in June 1962 signed by Boothe only.

Boothe testified that he wrote and signed the April 22, 1962, letter on the date shown. Franklin testified that he received it in April 1962. Robert Sisko, Franklin's agent, testified that he communicated its contents to Kachig in April 1962. Kachig testified that he never saw or heard of the letter. Judgments totaling over $11,000 were rendered against him. Boothe, who received a judgment for only $100 nominal damages, engaged respondent to represent him on an appeal. While the appeal was pending Kachig commenced an investigation which resulted in criminal charges being filed against respondent, Boothe, Franklin and Sisko. Boothe and respondent's former secretary Mrs. Voeth testified for the prosecution. Franklin and Sisko were acquitted.

Subsequent to respondent's convictions Kachig filed a civil action against respondent, Boothe, Franklin and others for recovery of the $11,000 judgment which had been obtained against him by perjured testimony plus $300,000 general and punitive damages. This action was pending during the disciplinary proceedings (Orange County Superior Court No. 147131).[9] Because of a deposition made by Boothe in that action, respondent subpoenaed Boothe to testify before the special administrative committee and he offered in evidence a Xerox copy of a carbon copy of a typewritten letter dated April 22, 1962,[10] purportedly written on that date by Boothe

---

irrevocable agreement to deliver my Bayside property not later than July 1st, 1962, as per Mr. Kachig's terms and conditions. You might query Mr. Kachig to see if he is agreeable to my leaving a few items in the guest house for the month of July for which I shall be glad to pay him rent.

Thank you for your courtesy in this matter.

Yours very truly,
(s) Laurence Boothe
Laurence Boothe"

[9]Motion by defendants for judgment on the pleadings was granted. Appeal now pending (4th Civ. No. 11502).

[10] *Special Exhibit A.*

"April 22, 1962

Mr. Robert Sisco,
c/o Donald V. Franklin,
325o [*sic*] East Coast Highway,
Corona del Mar, California.

Dear Bob:

Sorry I was not home when you called to have me initial the change in the agreement. And I am going to Los Angeles early tomorrow morning, so in case I should not reach you by phone, I want to confirm that I will back down on the date of delivery of my home to Mr. Kachig.

As I told you I thought I might need added time to move but if Mr. Kachig insists on delivery of the property on July 1 instead of the 31st. I

to Sisko. He testified that this was a carbon of the original letter of April 22, 1962, which was in his file when he lent it to Boothe in 1963. He explained that after Boothe told him he had lost this letter Boothe brought him some yellow legal paper with writing on it, saying that was what he had written and that it was the same *in substance* as the original; that he told Boothe that that would not be considered a true copy, that he would have *to recompose* a letter from that, that Boothe should either look for the original or, if he had a carbon or a Xerox copy that could be substituted; and thereafter his secretary told him that Boothe had returned the original. Respondent contended that the two letters were similar in substance although admittedly not identical. He did not satisfactorily explain why he did not recognize earlier, or did not advise the court, that the letter offered in evidence was not a duplicate of the original of the letter upon which he was relying to show a bilateral agreement, nor why he did not lay a proper foundation for his clients' testimony as to the letter so offered.

Nor did respondent explain the patent differences between the two letters. The letter offered at the civil trial was written in formal, legal style, was addressed to Franklin as a real estate broker, and it purported to constitute an unequivocal acceptance of Kachig's terms and conditions. Special Exhibit A is nonlegal in style, is addressed to Sisko personally, does not mention him as a real estate broker, and is precatory rather than emphatic in its terms. Respondent knew from his long experience as an attorney and in real estate matters that an unequivocal acceptance was necessary in order for him to successfully represent his clients in the civil action.[11]

Boothe testified that either he or his wife had found the carbon copy offered as Special Exhibit A sometime in 1968 while cleaning out a home filing cabinet where it had been misfiled. He had no memory of writing or mailing the original, nor of Sisko requesting such a letter. He admitted that

am sure I can arrange it. I will have to move my office and will start right away to find a spot. But I will appreciate it if, just as an ace in the hole, he will agree to let me stay in an extra month at a reasonable rental. If that is not agreeable to him I would be willing to settle for some space in the guest house where my office is. I have to sort out a lot of paper and it will be easier to do it there than put the stuff in storage.

So go ahead and button it up and make whatever arrangements you can for me but don't commit me to any rate of rental without checking with me first.

Very cordially,
Laurence Boothe."

[11]Nine days before he presented the fabricated letter in evidence, *Franklin* v. *Hansen* (1963) 59 Cal.2d 570, 573-576 [30 Cal.Rptr. 530, 381 P.2d 386], was filed. Respondent there represented Franklin in an action to recover a real estate broker's commission. A vital issue was the sufficiency of a writing to satisfy the statute of frauds and the necessity for an unequivocal statement.

the letter could have been written on his typewriter, that the phraseology sounded like his, and that the subject matter of the letter confirmed what he recalled to be the fact.

Mrs. Voeth testified against respondent and read from her stenographic notebook[12] for the period "3/18/63 to 4/23" her notes of a letter which she said respondent had dictated to her in April 1963. He had asked her to type it in rough draft form and to show the date "April 22, 1962."[13] This was identical to the letter introduced at the trial as having been written April 22, 1962, by Boothe. Mrs. Voeth gave the draft to respondent, did not type the final version and did not see the letter until the grand jury investigation.

Respondent sought to impeach her testimony but her statements were consistent with those given by her in the criminal proceeding. She testified that respondent brought her a large quantity of stenographic notebooks from the office to her home and asked if she could find her notes for the letter in question. By that time she had heard rumors that he was being investigated and was trying to put the blame on her. She found the notebook which contained the dictation in question, but told him that she did not find it because she wanted to be in a position to establish her innocence; and she kept it to protect herself "just in case you were pulling a stunt that you are pulling right now and that you might lie again."

Respondent informed the Disciplinary Board that Mrs. Voeth had testified against him out of vengeance because she had been fired by his former wife when she discovered they were having "an affair." He intimated that Mrs. Voeth and Boothe wrote the letter on which his conviction was based.

---

[12]At the criminal trial the court held that her stenographic notebooks were within the attorney-client privilege. The disciplinary committee overruled a similar objection, on the ground that former section 1881, Code of Civil Procedure, had been repealed and that there was no similar provision in the new Evidence Code, sections 995, 996, Attorney-Client Privilege.

[13]" 'Sunday, April 22, 1962 To: D.V.F.

From: Boothe.

I am sorry I was not at home when Mr. Sisco brought the exchange agreement to me for my reinitialing. This letter, however, constitutes my irrevocable agreement to deliver my bayside property not later than July 1, 1962, as per Mr. Kachig's terms and conditions. You might query Mr. Kachig to see if he is agreeable to my leaving a few items in the guest house for the month of July, for which I shall be glad to pay him rent.

Thank you for your courtesy in this matter.'

Very truly yours, or it could be yours very truly. Sometimes in shorthand, 'yours' is just a little thing like that (indicating), but, anyhow, it's one or the other."

Mrs. Voeth also gave several reasons for her testimony that she knew that the shorthand book was for the year 1963.

He could not satisfactorily explain Special Exhibit A consistently with the 1963 shorthand book. He now suggests that it is more suggestive of innocence than of complicity that he took the notebooks to Mrs. Voeth rather than destroying them. The inference readily arises, however, that destruction of all the notebooks which presumably he normally kept would have suggested a guilty conscience; and that discovery and elimination of the incriminating dictation from the retained notebooks would have been much more to his advantage.

There was other evidence at the criminal trial which showed respondent's consciousness of guilt.[14]

The record of conviction is conclusive as to guilt. (Bus. & Prof. Code, § 6101.) The jury by its verdict and the judge, by denying the motion for new trial, found respondent guilty beyond a reasonable doubt. In denying probation the judge found the evidence of guilt "overwhelming." The "newly-discovered" evidence is merely cumulative to evidence presented at the criminal trial and serves neither to cast doubt upon the conviction nor as extenuating circumstances. The production of this evidence indicated to the committee, which held eight sessions, and to the disciplinary committee, which held one, that he showed no remorse. The committee had the opportunity to view the witnesses and the respondent and is in a better position than is the reviewing court, faced only with the cold printed record, to determine the respondent's state of mind. (*Feinstein* v. *State Bar* (1952) 39 Cal.2d 541, 547 [248 P.2d 3].)

Respondent's application for a pardon has been unsuccessful. No other proceedings are pending. And even if the "newly-discovered" evidence had been found in time to have been considered on motion for new trial it does not meet the test stated by this court in *People* v. *Williams* (1962) 57 Cal.2d 263, 270 [18 Cal.Rptr. 729, 368 P.2d 353].[15]

Under the circumstances shown disbarment would be appropriate. Re-

---

[14]He suggested to Boothe that the typewriter on which the letter was written should be destroyed, and suggested to Mrs. Voeth that she destroy her notebooks. He checked to ascertain if the paper could be traced as post-1962 paper. In 1963 he tried to get Mrs. Voeth to testify that he had telephoned her on Easter Sunday, April 22, 1962, to go to his office and write a letter for Boothe; he told Mrs. Voeth to tell the district attorney's investigator that she knew nothing; and he told her that he would be disbarred if the prosecution could prove that the letter was typed by someone in his office.

[15]"To entitle a party to have a new trial on this ground 'it must appear, — "1. That the evidence, and not merely its materiality be newly discovered; 2. That the evidence be not cumulative merely; 3. That it be such as to render a different result probable on retrial of the cause; 4. That the party could not with reasonable diligence have discovered and produced it at the trial; and 5. That these facts be shown by the best evidence of which the case admits." ' "

spondent had many years experience as an attorney and in real estate matters. He was not shown to have been influenced by other persons. He acted in deliberate violation of his duties as an attorney at law and an officer of the court. He practiced a wilful deception upon the court and upon the public. He caused serious harm to others. He made no restitution. He made no showing of any emotional, mental, financial, physical or other problems which might have contributed to his wrongdoing. ■ This court must protect the public's right to representation by attorneys who are worthy of trust and who fulfill the professional standards required of them. (*Alkow v. State Bar* (1971) 3 Cal.3d 924, 936 [92 Cal.Rptr. 278, 479 P.2d 638].)

■ The crimes of which respondent was convicted involve moral turpitude. (See 1 Witkin, Cal. Procedure (2d ed. 1970) pp. 204-206.) They evidence conduct contrary to the high standards of honesty and integrity expected of an attorney at law, and a violation of the oath respondent took when admitted to the practice of law. Section 6068 of the Business and Professions Code prescribes that "It is the duty of an attorney . . . (d) to employ, for the purpose of maintaining the causes confided to him such means only as are consistent with truth, and never to seek to mislead the judge or any judicial officer by an artifice or false statement of fact or law." It is utterly reprehensible for an attorney at law to actively procure or knowingly countenance the commission of perjury (*In re Allen* (1959) 52 Cal.2d 762, 768 [344 P.2d 609]). Knowingly offering as genuine and true a written instrument fraudulently antedated and fraudulently fabricated is equally reprehensible. ■ As this court stated in *In re Smith* (1967) 67 Cal.2d 460, 461-462 [62 Cal.Rptr. 615, 432 P.2d 231]: "In determining the appropriate degree of discipline, each case, whether a conviction, referral or original proceeding, must rest on its own facts. This court has generally disbarred attorneys who have been convicted of serious crimes. . . . Under Business and Professions Code sections 6101-6102, as amended in 1955, disbarments and not suspensions have been the rule rather than the exceptions in cases of serious crimes involving moral turpitude, the purpose of the statutes being to protect the public, as well as the courts and the legal profession."

Third: *Degree of discipline to be imposed.*

The factors that weigh against respondent have already been set forth, *supra*. We have carefully considered evidence of mitigating circumstances offered by respondent, namely, that he has no prior disciplinary record of any kind; that witnesses testified as to his good reputation as a lawyer, as a businessman, and as a civic and social leader in the community; that witnesses testified as to his integrity in handling large sums of money; that respondent had an honorable record for four years in the Air Force and is

currently a lieutenant colonel in the reserves; that he is now 66 years of age; that he has had difficulty in obtaining employment because of his age and his criminal record. Respondent also states that he is in poor health, has 10-year-old twins to support, and that his appeals and his divorce have left him in financial difficulties. ▮ The favorable testimony of witnesses, especially that of attorneys and business acquaintances, is entitled to considerable weight, but "however laudatory or great in quantity, is not alone conclusive." *(Feinstein* v. *State Bar, supra,* 39 Cal.2d p. 547.)

Further circumstances considered by this court are that respondent has suffered the ignominy of a criminal conviction, has served time in a penal institution and on parole, and he has been under suspension from practice since June 29, 1966. More than five years have elapsed.

▮ While disbarment would be justified, we think, in view of the fact that this is respondent's first offense and that he has completed the criminal sentence imposed upon him, that the public interest would best be served by suspending respondent for an additional three years, with one year actual suspension and the balance of the period on probation subject to conditions.

It is therefore ordered that Arthur Vernon Jones' present suspension from the practice of the law be continued for an additional period of three years from the date of filing this opinion. Execution of this order of suspension is stayed, and respondent is placed upon probation for the period of three years upon the following conditions:

(1) He shall not practice law for the first year of his probationary period;

(2) During the balance of his probationary period he may engage in the practice of law, and if during this period no conduct of respondent is called to the attention of this court by the State Bar or otherwise that casts doubt upon his having conformed to the high standards expected of members of the State Bar of California, then, without further order of this court, his probation and suspension shall be terminated and he shall be reinstated with all the status of an attorney.