[S. F. No. 23166. In Bank. June 3, 1975.]

In re HARRY JOSEPH KREAMER on Suspension.

COUNSEL

Lewton & McGuinn, John A. McGuinn and Howard H. Jewel for Petitioner.

Herbert M. Rosenthal for Respondent.

OPINION

**THE COURT.**—This is a proceeding to review a recommendation of the Disciplinary Board of the State Bar (Board) that petitioner be suspended from the practice of law for a period of five years on conditions of probation, including actual suspension for the first three years, because of his conviction of a crime. (Bus. & Prof. Code, §§ 6101, 6102; Cal. Rules of Court, rule 951.)[1]

Petitioner was admitted to practice in 1965; there have been no prior disciplinary proceedings against him. On April 19, 1972, he pleaded guilty to, and was convicted of two offenses: (1) illegal possession of a controlled substance (marijuana), a misdemeanor, in violation of 21 United States Code, section 844; and (2) conspiracy (possession of marijuana with intent to distribute), a felony, in violation of 21 United States Code, section 846. For the first offense he was sentenced to prison for the maximum term of one year; for the second offense he was sentenced to prison for the maximum term of five years. In each instance

---

[1]Although our review of the Board's recommendation in conviction reference proceedings under rule 951, subdivisions (b), (c) and (d) is invoked in these situations after the filing with this court by the attorney of written objections to the Board's report and recommendation so that the attorney is technically the "objector," we follow our practice of designating him as "petitioner."

the judgment provided that petitioner was sentenced for study as prescribed in 18 United States Code, section 4208(c) and that the sentence was subject to modification in accordance with 18 United States Code, section 4208(b). On August 26, 1972, and after such diagnostic study, petitioner's sentences were reduced as follows: As to the section 844 offense, execution of the remainder of the sentence was suspended and petitioner was placed on probation for five years; as to the section 846 offense, petitioner's term was reduced to 18 months. On March 28, 1973, petitioner was paroled to Halfway House in Oakland until June 1973. Petitioner will remain on probation until 1978.

On March 14, 1973, we referred this matter to the State Bar for hearing, report and recommendation on whether the facts and circumstances surrounding the commission of the above two offenses involved moral turpitude or other misconduct warranting discipline, and if so, as to the nature and extent of the discipline to be imposed. (Cal. Rules of Court, rule 951(c).)

After a hearing by the local administrative committee[2] and a further hearing by the Board, the Board unanimously determined that the facts and circumstances surrounding the commission of each offense involved moral turpitude and other misconduct warranting discipline. The Board by a vote of nine to five recommended[3] that petitioner be suspended from the practice of law for five years, including actual suspension for three years.[4]

---

[2] The local administrative committee unanimously concluded that the facts and circumstances surrounding the commission of the offenses involved moral turpitude warranting discipline but unanimously recommended that petitioner be suspended from the practice of law for two years, that execution of such suspension be stayed and that petitioner be placed on probation for said two years, conditioned on no further misconduct on his part.

[3] Of the five members voting "no," two did so on the ground that the discipline recommended was excessive and that petitioner should be placed on probation for five years with one year actual suspension; one member, on the ground that the discipline recommended was excessive and that petitioner should be placed on probation for three years with one year actual suspension; one member on the ground that the discipline recommended was excessive, that the recommendation of the local administrative committee should be followed and that the criteria established in *In re Higbie* (1972) 6 Cal.3d 562 [99 Cal.Rptr. 865, 493 P.2d 97] should be applied; and one member on the ground that the discipline recommended was insufficient.

[4] The Board also recommended the following conditions of probation: Compliance with the State Bar Act and Rules of Professional Conduct; filing of quarterly reports with the State Bar; answering fully, promptly and truthfully any inquiries by authorized representatives of the Disciplinary Board relating to petitioner's compliance with the terms of probation.

Thereafter petitioner filed with this court written objections to the Board's report and recommendation together with a supporting brief. (Cal. Rules of Court, rule 951(d).)

We first set forth the material facts as disclosed by the findings and the undisputed evidence in the record. Petitioner was graduated from law school in 1964 after a distinguished academic career, and was admitted to the California Bar in 1965. After a year's clerkship with a federal judge, he entered the active practice of law first with a personal injury firm and shortly thereafter with a prominent San Francisco labor law firm. According to the testimony of several former associates, his work product at the latter firm was excellent, and he enjoyed a reputation as a conscientious and even brilliant young lawyer. While working at the law firms, petitioner devoted a great deal of his spare time to such pursuits as the defense of indigent criminal defendants and litigation opposing the death penalty.

Beginning in 1966, petitioner became increasingly involved with what is referred to in the testimony as the "counter-culture way of life" and began to drift gradually away from his former friends and colleagues. This change was largely the result of a short and unhappy marriage entered into in a desperate attempt to ease the depression he experienced following a break-up with his former fiancee. However, even after the marriage was terminated, the change in petitioner's life style continued. His active participation in social causes gave way to a more passive rejection of established institutions and traditional societal values. He increasingly turned to the use of marijuana in an effort to escape his emotional problems, although he declined offers to sell or distribute the drug.

Losing interest in the practice of labor law, petitioner left the firm in late 1969 and set up his own practice. His work as a sole practitioner was devoted largely to the defense of friends arrested on drug-related charges. He received little compensation for his professional services and began to consider writing as a viable alternative to the practice of law.

By February or March of 1971, petitioner, having decided to pursue a career as a writer, totally abandoned his law practice, terminated all relationships with former clients, and moved to Bolinas. He had difficulty earning money and was forced to use his small savings. In addition he felt obligated to defray the substantial medical and hospital bills of his fiancee (now his wife) who had become acutely ill. Faced with

these debts and desperate for funds, petitioner sought opportunities to earn or borrow money. At this point a friend suggested that he retail marijuana.

In August 1971 petitioner obtained 25 pounds of marijuana on consignment, planning to sell it at a price which would enable him to pay his supplier and realize a profit. His sales efforts proved unsuccessful, however, because of the poor quality of the marijuana. On August 15, 1971, while in the process of returning 20 pounds of the drug to his supplier, he stopped at a friend's house for a visit. While he was there, federal narcotics agents in the course of arresting another person detected the odor of marijuana emanating from petitioner's car and placed him under arrest.

Petitioner retained an attorney, pleaded not guilty to the federal charge under 21 United States Code, section 844, and sought to raise a search and seizure defense. His attorney and his friends tried to persuade him that his behavior was self-destructive, that it was the expression of a chronic emotional depression, and that he should seek psychiatric help. Petitioner at first rejected these suggestions. Convinced that his arrest precluded his return to the practice of law, he embarked upon a more grandiose marijuana distribution scheme in the hope of alleviating his now increased financial problems. He agreed with three friends to arrange for a shipment of a large quantity of marijuana, approximately 1,000 to 2,000 pounds, from Florida to the Bay Area. His exact fee was to depend upon the amount actually shipped; but he expected to earn around $7,500.

With funds supplied by his associates in the venture, petitioner chartered a plane in his own name from a small air freight company purportedly for the purpose of picking up in Florida a cargo represented as sculpture and transporting it to the Oakland airport. On October 17 he and his confederates took delivery of a cargo of 791 pounds of marijuana at the airport and loaded it onto a truck. One of the confederates drove the truck away and petitioner left separately in his own car. He was followed by federal narcotics agents and arrested.

At this point petitioner finally realized that he was in desperate need of help. He communicated with his parents in the East and with several former friends. They all responded with financial and moral support. Recognizing that his conduct in committing the second offense while still facing charges for the first one was irrational and self-destructive, he

began consulting a psychiatrist. He also married his fiancee who had strenuously objected to his involvement in the latest marijuana escapade.

Faced with two separate federal prosecutions, petitioner, as indicated earlier, finally entered pleas of guilty in both. After sentence, commitment for diagnostic study, reduced sentence and service of a reduced term, petitioner in March 1973 was paroled to a halfway house. He resumed the practice of law, doing research and writing for Bay Area law firms on a retainer basis.

The record contains testimony from members of these firms as to petitioner's moral character, his honesty and the excellent quality of his legal work. Their opinions were corroborated by the testimony of the federal judge for whom petitioner clerked upon his graduation from law school, who expressed a similar high regard for petitioner's legal talents as well as a firm belief in his rehabilitation.

Petitioner did not challenge the local committee's finding that his offense involved moral turpitude at the hearing before the Board or in his brief before this court. He concedes that, in light of *In re Cohen* (1974) 11 Cal.3d 416 [113 Cal.Rptr. 485, 521 P.2d 477], the Board's finding of moral turpitude was justified. He contends only that the discipline recommended by the Board is excessive, in light of the nature of the offense and the mitigating factors. He urges that we adopt instead the recommendation of the local committee. (See fn. 2, *ante.*)

Before taking up petitioner's main contention, we make a few preliminary observations on the issue of moral turpitude. Although petitioner has not urged this issue before us, we have reviewed the matter independently (*In re Fahey* (1973) 8 Cal.3d 842 [106 Cal.Rptr. 313, 505 P.2d 1369]; *In re Higbie, supra,* 6 Cal.3d 562) and are satisfied that the Board's determination is correct. ■ While petitioner's offense does not involve moral turpitude as a matter of law (see *In re Fahey, supra,* at pp. 849-850; *In re Higbie, supra,* at pp. 569-570), an examination of the facts and circumstances surrounding it, as disclosed by the record before us, yields uncontroverted evidence that petitioner was aware of the laws proscribing possession and distribution of marijuana, that he was a principal and not merely an adviser in both enterprises and that he entered into them at least in part for the purpose of financial gain. These circumstances justify a finding of moral turpitude. (See *In re Cohen, supra,* at p. 421.)

We turn to petitioner's principal contention that the discipline recommended by the Board is too severe in the light of the circumstances of his case. ■ "Although we have the final word as to the discipline to be imposed [citation], the recommendation of the Board is given great weight. [Citation.] Petitioner has the burden of showing that the Board's recommendation is erroneous or unlawful. [Citations.]" (*Yokozeki* v. *State Bar* (1974) 11 Cal.3d 436, 450 [113 Cal.Rptr. 602, 521 P.2d 858].)

The federal offenses of which petitioner was convicted on his pleas of guilty were serious in nature and reflected on his character as a member of the legal profession whose duty it was to "support the Constitution and laws of the United States and of this State." (Bus. & Prof. Code, § 6068, subd. (a).) The seriousness of his acts is augmented by the fact that he wilfully and deliberately violated the law for financial gain and, even while under one serious charge, chose to commit a second and more serious offense. ■ Nevertheless we discern and must give recognition to a number of factors in petitioner's case which at once afford some explanation of his conduct, allow further assessment of his character in the light of his post-conviction behavior and all in all have a significant mitigating effect on the charges now before us.

Petitioner has never before had disciplinary proceedings brought against him. (*In re Cohen, supra,* 11 Cal.3d at p. 422; *Mrakich* v. *State Bar* (1973) 8 Cal.3d 896, 907 [106 Cal.Rptr. 497, 506 P.2d 633]; *In re Higbie, supra,* 6 Cal.3d at p. 573.) His involvement in the marijuana offenses was motivated in large part by a domestic financial crisis arising out of his recognition of an obligation to pay his fiancee's unforeseen and substantial medical expenses. (*Bradpiece* v. *State Bar* (1974) 10 Cal.3d 742, 747 [111 Cal.Rptr. 905, 518 P.2d 337]; *Anderson* v. *State Bar* (1941) 17 Cal.2d 375, 378 [110 P.2d 1].) He is young, and committed the offenses during a period of protracted emotional difficulties. (*In re Fahey, supra,* 8 Cal.3d at p. 850.) His offenses were not committed in his capacity as an attorney, and were not in any way related to his practice of law. As noted above, he had ceased to practice some months prior to the commission of his first offense, and when he was arrested, he listed his occupation as a writer. (Compare *In re Higbie, supra.*) Furthermore, there was extensive and uncontroverted testimony by attorneys with whom he was associated as well as by the federal judge for whom he had clerked, as to his rehabilitation, his return to a more normal life, his value to the profession, and his past and present good moral character. (*In re Jones* (1971) 5 Cal.3d 390, 401 [96 Cal.Rptr. 448, 487 P.2d 1016].) To the same effect was a letter sent by petitioner's federal probation officer to the local committee, expressing firm optimism with respect to petitioner's

future success and urging that he not be severely punished. Petitioner has been candid and cooperative throughout the disciplinary proceedings. (*Demain* v. *State Bar* (1970) 3 Cal.3d 381, 388 [90 Cal.Rptr. 420, 475 P.2d 652].) ■ ■■ ·He has already "suffered the ignominy of a criminal conviction, [and] has served time in a penal institution and on parole . . . ." (*In re Jones, supra,* 5 Cal.3d 390, 401.) Finally, the local administrative committee unanimously recommended that no period of actual suspension be imposed.[5] (*Benson* v. *State Bar* (1971) 5 Cal.3d 382, 388 [96 Cal.Rptr. 30, 486 P.2d 1230]; see also *In re Hanley* (1975) 13 Cal.3d 448, 455 [119 Cal.Rptr. 5, 530 P.2d 1381].)

■ We have said on a number of occasions that the purpose of a disciplinary proceeding is not punitive but to inquire into the fitness of the attorney to continue in that capacity to the end that the public, the courts and the legal profession itself will be protected. (*Bradpiece* v. *State Bar, supra,* 10 Cal.3d 742, 748.) ■ Having carefully considered and weighed all of the matters referred to above, we conclude that it will be just and adequate discipline in this case to suspend petitioner for three years, but to stay the suspension and place him on probation.

It is ordered that petitioner be suspended from the practice of law for a period of three years, but that execution of the order be stayed and that he be placed on probation for said three-year period upon the conditions prescribed by the Disciplinary Board in this matter, excepting, however, any condition requiring a period of actual suspension. This order is effective 30 days after the filing of this opinion.

---

[5]Petitioner urges that the recommendation of the local committee be given greater weight than that of the Board. In so urging, he contends that the Board failed to adequately consider the mitigating factors presented in the record in assessing the appropriate discipline, as evidenced by the Board's findings of fact eliminating reference to several of these mitigating circumstances. We decline petitioner's invitation. We note that the Board had before it the entire record of the proceedings of the local committee, and we will not assume in the absence of strong evidence to the contrary that the Board shirked its duty to consider the entire record. (Evid. Code, § 664.) Furthermore, it is well established that "although the local committee's greater opportunity to observe and judge the credibility of the witnesses requires that great weight be given to their *factual* findings, it is the Board's recommendation in the matter of the appropriate degree of discipline which is accorded the greater weight." (*Tomlinson* v. *State Bar* (1975) 13 Cal.3d 567, 578 [119 Cal.Rptr. 335, 531 P.2d 1119]; original italics.)