[No. S006377. Mar. 16, 1989.]

In re DAVID KIRKOR DEMERGIAN on Disbarment.

**COUNSEL**

Kenneth C. Noorigian, Gorrill & Noorigian, Fitzmaurice, Buchbinder & Steres and Fitzmaurice & Steres for Petitioner.

Diane C. Yu, Truitt A. Richey, Jr., and William F. Stralka for Respondent.

OPINION

**THE COURT.**—We review the recommendation of the Review Department of the State Bar Court that petitioner David Kirkor Demergian be disbarred. That recommendation was based on petitioner's 1986 conviction after a plea of guilty to misdemeanor grand theft (Pen. Code, § 17, subd. (b)(5)), stemming from his misappropriation of over $25,000 from a client trust account. Petitioner asserts disbarment is excessive in light of his mitigating evidence. In the alternative, petitioner claims his hearing before a retired judge and the denial of his request for a three-member hearing panel violated the due process, equal protection, and privileges and immunities provisions of the California and federal Constitutions. For the reasons set forth below, we find petitioner's arguments unconvincing. Thus, we adopt the recommendation of the review department.

Facts

Petitioner was admitted to practice in California in December 1980. He entered private practice as a sole practitioner. In May 1982, petitioner was hired by Colonel Michael T. Goupil to represent him in a marriage dissolution action filed by his wife, Margaret Price-Goupil.

In December 1984, petitioner received a check for $21,149.82 from the escrow company for the sale of the Goupils' house. He deposited the check in his client trust account pending a distribution order by the court in the Goupils' dissolution action. Deposit of that check brought the balance in the trust account to $23,379.38. On March 15, 1985, petitioner wrote a check for $3,000 on his client trust account and deposited it in his personal checking account, which was overdrawn by $492.14. Less than a week later, petitioner wrote a check for $2,000 on his client trust account, received $1,750 in cash, and deposited the balance in his personal checking account. From December 1984 (when the Goupils' funds were entrusted to petitioner) to April 1985, petitioner misappropriated a total of $10,154.86 from the monies he was to hold in trust on behalf of the Goupils.

During March 1985, Margaret Goupil's attorney, Beatrice Snider, made repeated demands on petitioner for an accounting of the funds from the sale of the Goupil residence. When petitioner failed to provide an accounting, attorney Snider filed an ex parte request for transfer of the trust funds and accrued interest to her client trust account on behalf of the Goupils. On April 1, 1985, petitioner deposited $11,500 in his client trust account in anticipation of the court's order requiring him to pay out the monies owed to the Goupils. On April 3, pursuant to a court order, petitioner wrote Margaret Goupil a check on his client's trust account for $5,787.34 for

arrearages of child and spousal support due her from Michael Goupil, and opened an interest-bearing trust savings account in his own name as trustee for the Goupils' pending divorce action. He paid $15,566.52 into the new account from his client trust account.

Between May 3 and May 16, 1985, petitioner withdrew all funds on deposit in the new trust savings account. As he had done during his earlier misappropriations, he spent those funds for his own use, without the knowledge or consent of the Goupils, primarily to purchase cocaine. Petitioner estimates that between October or November 1984 (when he began "freebasing" cocaine) and June 1985, he spent approximately $80,000 on cocaine. He also was drinking heavily.

In early June 1986, petitioner was charged in a criminal complaint with theft of personal property of a value in excess of $400, a felony, arising out of the misappropriation of the Goupils' funds. In September of that year, pursuant to a plea bargain, petitioner pleaded guilty to one count of misdemeanor grand theft (Pen. Code, § 17, subd. (b)(5)). He was sentenced to three years probation with the conditions that he serve two days in the county jail, make restitution for any amounts still owed to his victims, perform 240 hours of community service, participate in a rehabilitation program as prescribed by the probation officer, and neither use nor possess any dangerous drugs or narcotics without a valid prescription.

This court subsequently ordered petitioner suspended from the practice of law effective January 2, 1987, pending final disposition of this disciplinary proceeding. We also ordered petitioner to comply with rule 955 of the California Rules of Court.

We referred the matter to the State Bar for a hearing, report, and recommendation on the discipline to be imposed. Petitioner requested that the matter be heard before a three-member hearing panel. That request was denied on the ground that the hearing was estimated to take more than one day. (See Rules Proc. of State Bar, rule 558(d) [presiding referee of the State Bar Court is not authorized to grant a three-member panel in cases estimated at more than one day in duration].) Petitioner's case was heard by a retired judge (William A. Munnell), who adopted the stipulation of facts by the parties and recommended that petitioner be disbarred "with the hope that upon proof of full and complete rehabilitation as time will prove . . . he be readmitted to the practice of law." Petitioner's request for reconsideration was denied. Thereafter, the review department unanimously adopted both the hearing officer's findings of fact and his recommendation that petitioner be disbarred.

## Discussion

### 1. *Constitutional Claims*

■■, ■■ ■ We turn first to petitioner's contention that denial of his demand for a three-member hearing panel violated the due process, equal protection, and privileges and immunities provisions of both the California and federal Constitutions. Petitioner requested a three-member panel, pursuant to rule 558(a)(3) of the State Bar Rules of Procedure. Although his request was filed in a timely manner, the State Bar Court refused to consider it because a designee of the presiding referee of the State Bar Court determined that the hearing was likely to take more than one day.

Petitioner's constitutional attack focuses on rule 558(d) of the State Bar Rules of Procedure. That rule, however, merely implements Business and Professions Code section 6079, subdivision (b), which requires that a hearing estimated to last more. than one day must be conducted by a retired judge, if available. Section 6079, subdivision (b), provides in part: "Subject to the availability of a retired judge as provided in this section, the trial in a State Bar disciplinary proceeding shall be heard by a retired judge if the presiding referee of the State Bar Court or his or her designee determines that the matter or proceeding is complex, or that trial is likely to be in excess of one day, or the circumstances dictate that it cannot be heard by volunteer referees without a likelihood of undue delay or burden to the State Bar Court, the complainant, or the respondent."

■ Petitioner's due-process claim is without merit. Although an attorney in a disciplinary proceeding has a right to a fair hearing (*Emslie* v. *State Bar* (1974) 11 Cal.3d 210, 228 [113 Cal.Rptr. 175, 520 P.2d 991]), petitioner does not contend that a hearing before one judge is fundamentally unfair. There can be little doubt that the Legislature constitutionally could provide for hearings before individual judges in all State Bar disciplinary matters. In addition, petitioner demonstrates no prejudice to his cause as a result of his hearing before a retired judge. (See *Mrakich* v. *State Bar* (1973) 8 Cal.3d 896, 906 [106 Cal.Rptr. 497, 506 P.2d 633].)

■ Petitioner's equal-protection claim also fails. He argues that Business and Professions Code section 6079, subdivision (b), establishes an unconstitutional classification based on the amount of evidence a litigant wishes to present. ■ Moreover, he asserts we should apply the "strict scrutiny" test to that classification. ■ At the federal level, strict scrutiny applies only if a legislative classification involves a suspect classification or significantly infringes on a fundamental right. (*Plyler* v. *Doe* (1982) 457 U.S. 202, 216-217 [72 L.Ed.2d 786, 798-799, 102 S.Ct. 2382].) We have

followed the same test in applying the equal protection guaranties now set forth at article I, section 7 of the California Constitution. (*Sail'er Inn, Inc.* v. *Kirby* (1971) 5 Cal.3d 1, 16 [95 Cal.Rptr. 329, 485 P.2d 529, 46 A.L.R.3d 351].)

██ Petitioner does not allege that Business and Professions Code section 6079 involves a suspect classification. We conclude that it also does not significantly infringe on a fundamental right. Assuming, as petitioner asserts, that he has a fundamental right to be heard in "court" before he can be deprived of his license to practice law, section 6079 does not significantly infringe on that right. Section 6079 does not determine whether petitioner receives a hearing; rather, it affects who conducts that hearing. Retired judges who serve as hearing officers must qualify by virtue of expertise and experience in disciplinary matters, familiarity with broad areas of law, willingness and availability to handle disciplinary matters, and lack of a record of disciplinary sanctions. (Bus. & Prof. Code, § 6079, subd. (f).) In addition, petitioner's initial hearing was only part of the "hearing" to which he is entitled under state law. We must not ignore the role of the review department in recommending discipline and the duty of this court independently to pass on the weight and sufficiency of the evidence supporting that recommendation.

Thus, we apply the "rational basis" test. ██ Under that test, "the decision of the Legislature as to what is a sufficient distinction to warrant the classification will not be overthrown by the courts unless it is palpably arbitrary and beyond rational doubt erroneous. [Citations.] A distinction in legislation is not arbitrary if any set of facts reasonably can be conceived that would sustain it." (*Sacramento M. U. Dist.* v. *P. G. & E. Co.* (1942) 20 Cal.2d 684, 693 [128 P.2d 529].) ██ It certainly is not erroneous "beyond rational doubt" for the Legislature to seek to minimize the burden on the State Bar Court and on its pool of volunteer panelists by providing that cases expected to last more than one day should be heard by qualified retired judges.

██ We turn now to petitioner's claim that deprivation of a three-member panel violates the privileges and immunities clause of the Fourteenth Amendment. That clause protects only those rights incident to national citizenship; it does not protect rights that depend solely on state law. (*Addison* v. *Addison* (1965) 62 Cal.2d 558, 568 [43 Cal.Rptr. 97, 399 P.2d 897, 14 A.L.R.3d 391]; *Slaughter-House Cases* (1872) 83 U.S. (16 Wall.) 36, 74-80 [21 L Ed 394, 408-410].) The right to a three-member hearing panel is a creature of state law. (See Rules Proc. of State Bar, rule 558 [setting forth the circumstances in which a three-member hearing panel will be provid-

ed].) Thus, it cannot provide the basis for a Fourteenth Amendment privileges and immunities claim.

Finally, we do not address the merits of several other constitutional arguments presented by petitioner because they are not fairly raised on the facts of this case. Petitioner argues that Rules of Procedure of the State Bar rule 558(d) is unconstitutionally vague and ambiguous in that reasonable minds could not agree as to what a "complex" case is. The record clearly reveals, however, that petitioner was denied a three-member panel because his hearing was estimated to take more than one day, not because his case was deemed "complex." Petitioner also claims that rule 558(d) unconstitutionally vests in a nonjudicial officer (i.e., the presiding referee or his designee) the discretion to deny attorneys in State Bar proceedings the right to a three-member panel. The record indicates that petitioner's counsel estimated that the hearing would take more than one day. Thus, under Business and Professions Code section 6079, subdivision (b), the presiding referee had no discretion to grant petitioner a three-member panel.

## 2. *Mitigation*

Petitioner concedes that some form of discipline is warranted in his case. He contends, however, that in light of the evidence in mitigation, disbarment is unnecessary to protect the public. We disagree.

We begin with the familiar principle that this court conducts its own evaluation of the appropriate discipline. (*In re Basinger* (1988) 45 Cal.3d 1348, 1358 [249 Cal.Rptr. 110, 756 P.2d 833]; *Greenbaum* v. *State Bar* (1987) 43 Cal.3d 543, 550 [237 Cal.Rptr. 168, 736 P.2d 754].) In doing so, however, we accord great weight to the disciplinary recommendations of the review department. (*Rosenthal* v. *State Bar* (1987) 43 Cal.3d 658, 661 [238 Cal.Rptr. 394, 738 P.2d 740].) "The burden is on petitioner to show that the recommendation is erroneous or unlawful." (*In re Vaughn* (1985) 38 Cal.3d 614, 618 [213 Cal.Rptr. 583, 698 P.2d 651].)

Petitioner stipulated that the facts and circumstances surrounding his conviction involved moral turpitude in willful violation of Business and Professions Code section 6106. He further stipulated that his conduct constituted a willful violation of his oath and duties as an attorney pursuant to Business and Professions Code section 6068, as proscribed by section 6103, as well as a willful violation of Rules of Professional Conduct, rules 8-101(A) and 8-101(B)(3)-(4).

Absent compelling mitigating circumstances, misappropriation of client trust funds by an attorney warrants disbarment. (*In re Basinger,*

*supra,* 45 Cal.3d at p. 1358; *In re Vaughn, supra,* 38 Cal.3d at pp. 618-619.) Indeed, had petitioner been convicted of felony grand theft, he would have been summarily disbarred under Business and Professions Code section 6102. Subdivision (c) of that section provides: "[T]he Supreme Court shall summarily disbar the attorney if the conviction is a felony under the laws of California . . . which meets both the following criteria: [¶] (1) An element of the offense is the specific intent to deceive, defraud, steal, or make or suborn a false statement. [¶] (2) The offense was committed in the course of the practice of law or in any manner such that a client of the attorney was a victim." This amendment, adopted in 1985 (see Stats. 1985, ch. 453, § 15, p. 1754), reflects the gravity of fraud or theft committed against a client by an attorney. Although petitioner's conviction was for a misdemeanor, we note that his crime satisfies both criteria set forth in subdivision (c) of section 6102.

Rather than consider petitioner's numerous claims of mitigation seriatim, we group most of them according to whether they (1) mitigate the seriousness of his prior conduct, or (2) indicate petitioner's subsequent rehabilitation.

### a. *Mitigating factors*

In petitioner's favor, letters in the record from attorneys and former clients attest to petitioner's honesty, trustworthiness, and proper professional conduct prior to his abuse of cocaine and alcohol. (See *Segretti v. State Bar* (1976) 15 Cal.3d 878, 888 [126 Cal.Rptr. 793, 544 P.2d 929].) ▆▆ Petitioner also was experiencing domestic difficulties in the months prior to his misappropriations. Petitioner's marital difficulties began in early 1983, when he initiated an affair with his personal secretary. This affair led to the breakup of his marriage of 12 years. Petitioner began to drink heavily, and in October or November 1984, he began "freebasing" cocaine. His divorce became final at about the same time. Soon thereafter, his secretary left him. Such domestic difficulties can be considered in mitigation of the seriousness of an attorney's professional misconduct. (See *In re Mudge* (1982) 33 Cal.3d 152, 156 [187 Cal.Rptr. 779, 654 P.2d 1307].)

▆▆ Petitioner also offers in mitigation that he has no prior record of disciplinary conduct, that he was only 32 years old at the time he committed the offense, and that his use of cocaine rendered him unable to control his conduct. These circumstances do not weigh significantly in petitioner's favor. Petitioner's cocaine use began less than four years after his admission to the bar, and his misappropriations began shortly thereafter. A blemish-free record of such relatively short duration is entitled to little weight in mitigation. (*Rosenthal, supra,* 43 Cal.3d at p. 664; *Smith v. State Bar* (1985)

38 Cal.3d 525, 540 [213 Cal.Rptr. 236, 698 P.2d 139].) ▉▉▉ Nor does petitioner's age mitigate the seriousness of his conduct. Although we have considered age as a mitigating factor in the past, it does not require unusual maturity or judgment to understand that theft from a client trust account is wrong. (Compare *Segretti, supra,* 15 Cal.3d at p. 888 [attorney was 30 years old and "thought he was acting under 'the umbrella of the White House' "].) ▉▉▉ Finally, cocaine use is hardly a mitigating factor. Petitioner became addicted through voluntary use of an illicit drug. (Compare *In re Nadrich* (1988) 44 Cal.3d 271, 277 [243 Cal.Rptr. 218, 747 P.2d 1146] [drug addiction resulted from legitimate medical treatment].) Apart from petitioner's subsequent rehabilitative efforts, his use of cocaine increases the danger he presents to the public, the courts, and the reputation of the legal profession. Logically, therefore, it is a factor in *aggravation.*

b. *Evidence of rehabilitation*

Petitioner presents substantial evidence of his efforts at rehabilitation. The record reveals that petitioner entered a drug detoxification and rehabilitation program in June 1985, apparently at his father's insistence. He left the program one week later. During the first three days after checking out of the hospital, he used three and one-half ounces of cocaine, pointed a loaded gun at his fiancée and a friend, and expressed a desire to kill his former secretary. After these three days, a friend helped him check into another treatment hospital, where petitioner remained for three weeks.

▉▉▉ It is uncontested that petitioner has used neither alcohol nor cocaine since his discharge from the second treatment program in July 1985. This court has considered recovery from substance abuse a mitigating factor. (*Tenner* v. *State Bar* (1980) 28 Cal.3d 202, 207 [168 Cal.Rptr. 333, 617 P.2d 486].) Petitioner is active in several recovery-oriented programs, including Alcoholics Anonymous (AA), The Other Bar (an AA group oriented toward lawyers and judges), and Cocaine Anonymous. (See *In re Nadrich, supra,* 44 Cal.3d at p. 277 [active involvement in AA, Narcotics Anonymous, and The Other Bar considered a mitigating factor]; *Waysman* v. *State Bar* (1986) 41 Cal.3d 452, 457 [224 Cal.Rptr. 101, 714 P.2d 1239] [attendance at AA meetings and volunteer work with alcohol recovery programs weighed in mitigation].) A judge of the municipal court testified before the hearing officer that petitioner has been "very active" in The Other Bar and that he had no doubt that petitioner has been sincere in his efforts at recovery. Petitioner has retained his sobriety despite his suspension from legal practice, the death of his father, a broken neck sustained in an automobile accident, and serious financial difficulties.

▉▉▉ In addition to his efforts to overcome alcohol and cocaine abuse, petitioner has acknowledged the wrongfulness of his conduct, has cooper-

ated fully and candidly in the State Bar's disciplinary proceedings, and has expressed his willingness to accept some measure of discipline. Remorse and cooperation are mitigating factors. (*Bradpiece* v. *State Bar* (1974) 10 Cal.3d 742, 748 [111 Cal.Rptr. 905, 518 P.2d 337].) Petitioner made full restitution to the victim of his misappropriation "voluntarily and before the commencement of disciplinary proceedings," also a mitigating factor. (*Lawhorn* v. *State Bar* (1987) 43 Cal.3d 1357, 1366 [240 Cal.Rptr. 848, 743 P.2d 908]; *Waysman, supra,* 41 Cal.3d at p. 458.) The State Bar argues that the restitution should not be attributed to petitioner because he testified before the hearing panel that his friends, his parents, and his attorney "saw that the money was repaid, together with interest, and attorney's fees" approximately one week after petitioner was hospitalized in the second drug detoxification and treatment program. The hearing officer, however, found that petitioner "made full restitution to his victim. This appears to have been voluntary and well before the District Attorney of San Diego County decided to file criminal charges." We add that it also preceded any disciplinary proceedings or investigations by the State Bar. We find no reason to differ with the hearing officer's conclusion that the restitution properly could be attributed to petitioner.

 Petitioner has been employed as a law clerk since his suspension; his current employer has expressed complete confidence in his abilities and trustworthiness. The confidence of fellow attorneys and employers may be considered in mitigation. (*Bradpiece, supra,* 10 Cal.3d at p. 746; *In re Dedman* (1976) 17 Cal.3d 229, 234 [130 Cal.Rptr. 504, 550 P.2d 1040].) In addition, petitioner practiced law for approximately 17 months between the time of his release from drug treatment and the effective date of his suspension by this court, during which time he processed approximately $58,000 through client trust accounts without loss. That record is entitled to some weight in mitigation. (See *Bradpiece, supra,* 10 Cal.3d at p. 747 [four years of successful law practice after misconduct]; *In re Higbie* (1972) 6 Cal.3d 562, 573 [99 Cal.Rptr. 865, 493 P.2d 97] [attorney continued to practice law for over two years after incarceration and "successfully represented his clients' interests and obtained their trust"].)

 Finally, the record includes 67 letters written on petitioner's behalf, including 5 by sitting judges, 13 by practicing attorneys, 3 by clergy, and at least 36 by former clients. The letters generally attest to petitioner's competence, honesty, and outstanding character both before and after his involvement with drugs and alcohol, and to the confidence of his professional and personal acquaintances that his substance-abuse problems will not recur. (See *In re Dedman, supra,* 17 Cal.3d at p. 234; *Demain* v. *State Bar* (1970) 3 Cal.3d 381, 388 [90 Cal.Rptr. 420, 475 P.2d 652].)

c. *Other mitigating circumstances*

Petitioner asks that we consider in mitigation the fact that he has suffered the ignominy of a criminal conviction. It would be anomalous to consider his conviction as a mitigating factor, given that his conviction for grand theft triggered these proceedings. Although we have recognized "the ignominy of a criminal conviction" as a mitigating factor in the past (*In re Mudge, supra,* 33 Cal.3d at p. 157; *Segretti, supra,* 15 Cal.3d at p. 889; *In re Kreamer* (1975) 14 Cal.3d 524, 532 [121 Cal.Rptr. 600, 535 P.2d 728]; *In re Jones* (1971) 5 Cal.3d 390, 401 [96 Cal.Rptr. 448, 487 P.2d 1016]), those cases involved some period of incarceration. Moreover, because we inquire into petitioner's fitness to practice law—rather than the extent of his personal suffering—we decline to give any weight to petitioner's conviction as a mitigating factor, other than the rehabilitative effect it may have had on him.

Petitioner also suggests that we recognize his plea bargain in mitigation, reasoning that it indicates the prosecutor's belief that petitioner's conduct did not warrant the disbarment that automatically would have followed a felony conviction. Given the many reasons for engaging in plea bargaining, we decline petitioner's invitation to speculate as to the prosecutor's motives.

d. *Conclusion*

We conclude that petitioner has not met his burden of proving that the recommendation of the review department was erroneous or unlawful. (*In re Vaughn, supra,* 38 Cal.3d at p. 618.) The gravity of petitioner's conduct can hardly be overstated: in the course of his law practice, he misappropriated substantial sums entrusted him by a client, and used those funds to purchase illegal drugs. He actively deceived a court and another attorney when he temporarily replenished his client trust account to avoid detection of his misappropriations.

Although the dissent compares this case to *In re Nadrich, supra,* 44 Cal.3d 271, we do not find the analogy persuasive. In *Nadrich,* the attorney became addicted to Percodan over a two-year period during which his doctors prescribed that drug to relieve pain from multiple injuries he sustained in an automobile accident. He began using illegal narcotics to satisfy his addiction after his doctors stopped prescribing Percodan, but failed to offer him treatment for his addiction. (*Id.* at p. 274.) Although the crimes to which Mr. Nadrich pled guilty were undeniably serious (possession of a controlled substance with intent to distribute it, and using interstate commerce to distribute a controlled substance), we noted that he "withdrew from the active practice of law prior to committing his criminal acts," and

that his offenses were unrelated to his practice of law. (*Id*. at p. 277.) By contrast, petitioner's addiction resulted from voluntary use of an illegal drug, not prescribed use of a legal medication. Moreover, petitioner did not withdraw from the practice of law; indeed, he stole money from a client trust fund in order to satisfy his addiction. In short, this case is quite distinguishable from *Nadrich*.

Although we recognize the substantial evidence of petitioner's efforts at rehabilitation, our foremost concern is to protect the public, the profession, and the judiciary. (*In re Kreamer, supra,* 14 Cal.3d at p. 532; *Demain, supra,* 3 Cal.3d at p. 386.) Moreover, when serious criminal activity is involved, "evidence of any rehabilitation will be more persuasive if offered during any reinstatement proceedings after disbarment." (*In re Petty* (1981) 29 Cal.3d 356, 362 [173 Cal.Rptr. 461, 627 P.2d 191].) Thus, we adopt the recommendation of the review department.

Accordingly, we order that David Kirkor Demergian be disbarred from the practice of law and that his name be stricken from the roll of attorneys. This order is effective upon finality of this decision.

**KAUFMAN, J.,** Concurring and Dissenting.—I concur in the majority's affirmance of the findings of the Review Department of the State Bar Court, and in the majority's rejection of petitioner's constitutional challenges to the State Bar Court's procedures, but I respectfully dissent from the court's imposition of the extreme sanction of disbarment.

I do not minimize the gravity of petitioner's misconduct. Misappropriating client funds, even from a single client, is a serious offense fully warranting disbarment in the absence of a compelling showing of mitigating circumstances, but the showing made by this petitioner in mitigation *is* compelling.

The mitigating evidence is described in the majority opinion and need only be summarized here. Petitioner has no prior record of discipline and the misconduct in this case occurred during a period of aberrant behavior attributable to cocaine addiction. Petitioner made full restitution before disciplinary proceedings commenced, acknowledged wrongdoing at an early stage, demonstrated sincere remorse, and cooperated fully and candidly in the proceedings. Petitioner successfully completed a drug rehabilitation program and has used neither alcohol nor cocaine since July 1985. Petitioner is active in Alcoholics Anonymous, The Other Bar, and Cocaine Anonymous. After the misconduct but before his suspension, petitioner practiced law for 17 months with no further transgressions. Since his suspension, petitioner has been employed as a paralegal and enjoys the complete

confidence of his employer. Finally, 67 letters have been written by judges, attorneys, former clients, and others attesting to petitioner's competence, honesty, and outstanding character.

This case closely resembles *In re Nadrich* (1988) 44 Cal.3d 271 [243 Cal.Rptr. 218, 747 P.2d 1146],[1] in which this court declined to follow the review department's disbarment recommendation and instead imposed five years' suspension, consisting of one year of actual suspension followed by four years' probation. As noted in that case, "A probationary term enables the State Bar and this court to carefully monitor petitioner's progress and ensure that his rehabilitation continues." (*Id.,* at p. 280 (conc. opn. of Eagleson, J.).)

Petitioner has indicated his willingness to accept and abide by any conditions of probation this court chooses to impose, including both periodic and random drug testing and severe restrictions on his access to client funds. As in *Nadrich, supra,* 44 Cal.3d 271, disbarment in this case is both unnecessary and inappropriate. The public, the profession, and the courts would be better served by imposing a five-year suspension, consisting of a substantial period of actual suspension, and the balance as strictly supervised probation.

Panelli, J., concurred.

---

[1] As the majority opinion points out, Nadrich became addicted to prescribed medication and his offenses were not committed in the course of practicing law. But, on the other hand, Nadrich's offenses were more serious: he was arrested while engaged in the interstate sale of $60,000 worth of LSD, for which he was convicted of federal offenses and sentenced to prison for seven years. In any event, the significance of *Nadrich* for this case is not that the misconduct was identical (clearly it was not) but that in both cases the misconduct was rooted in drug addiction and in both cases compelling evidence of rehabilitation was adduced.