Filed 9/19/18

<u>CERTIFIED</u> <u>FOR</u> <u>PARTIAL</u> <u>PUBLICATION</u>[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Tehama)

----

| | |
|---|---|
| THE PEOPLE, | C082438 |
| Plaintiff and Respondent, | (Super. Ct. No. NCR95353) |
| v. | |
| CYNTHIA LOUISE HAYES, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Tehama County, Matthew C. McGlynn, Judge.  Reversed in part and affirmed in part.

Jin H. Kim, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Kathleen A. McKenna and Craig S. Meyers, Deputy Attorneys General, for Plaintiff and Respondent.

---

[*] Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of part II of the Discussion.

Following a jury trial, defendant Cynthia Louise Hayes was convicted of assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1)),[1] vandalism with damage exceeding $400 (§ 594, subds. (a), (b)(1)), and misdemeanor battery (§ 242). Before the jury rendered its verdict, defendant admitted five prior prison term allegations. (§ 667.5, subd. (b).) The trial court struck two of the prison priors and sentenced defendant to a seven-year eight-month state prison term.

On appeal, defendant contends she was denied representation at a critical stage of the proceedings, her prison priors should be struck because the felony underlying the most recent prior was reduced to a misdemeanor after her sentencing hearing, and the trial court abused its discretion in denying her motion to continue sentencing. We shall vacate the sentence, remand for resentencing, and otherwise affirm.

BACKGROUND

On September 3, 2014, between 7:00 p.m. and 8:00 p.m., J.C. was driving to the home of his mother, L.B., when he spotted, in front of a home's garage, items that were taken from his property about a week ago. As J.C. pulled in to talk to the home's owner, defendant came out of the house and yelled at him. When he realized he could not talk to defendant, who was "yelling and crazy," J.C. drove two miles up the road to his mother's house. The encounter with defendant lasted no more than five minutes.

Shortly after J.C. arrived at his mother's home, defendant pulled up in a pickup truck and started honking the horn. J.C. went outside, accused defendant of stealing his property, and told her to leave. Defendant responded by yelling at J.C. and punching him in the face. L.B. came out of the house and told defendant to leave. Defendant kept yelling, went to L.B.'s 2004 Mustang, and scratched the passenger-side door with her keys. When L.B. pushed defendant away from the car, defendant punched her, giving

---

[1] Undesignated statutory references are to the Penal Code.

2

L.B. a black eye. L.B. and defendant engaged in a struggle until L.B.'s husband pulled defendant off of L.B.

J.C. and L.B. yelled at defendant to leave. Defendant got into her truck and drove it straight at J.C. and L.B., coming within six to eight inches of L.B. before hitting a tree and a metal satellite pole. Defendant backed up and again tried to hit L.B. and J.C. but missed, striking L.B.'s car instead.

Defendant pulled out toward the road and struck a fence. She did not leave until J.C. took a shovel out of the back of her truck and smashed her windshield.

L.B.'s car sustained $2,231.82 in damage.

## DISCUSSION

## I

Defendant contends her convictions should be reversed because she was completely denied legal representation at a critical stage.

## A

On the first day of trial, the trial court held a hearing in chambers where it asked defendant whether she wanted to admit the prison priors or have a trial on them. During a discussion with the court on her rights with respect to the allegations, defendant said, "I don't understand. I am at a total loss at this. He didn't even call any of my witnesses or nothing for me." The court, with defense counsel's and the prosecutor's agreement, bifurcated the allegations. Defendant replied that she did not understand what bifurcation meant and reiterated her complaint about defense counsel not calling any witnesses. Defense counsel then requested an in camera discussion outside the prosecutor's presence, which the court granted.

Defense counsel made the following statement at the in camera hearing:

"I was appointed to represent Ms. Hayes in I believe November of last year.[2]  We set this matter, plead not guilty, set this matter for jury trial on the 30th of November with a no time waiver.  During those occasions when I spoke with Ms. Hayes, she indicated to me that her version of the facts of this case were that she was not present when this assault took place, that she was not there and it was in conjunction with what she told the police when she was questioned about this, that her car had been . . . stolen or taken and that it wasn't her -- and she doesn't know anything about this.

"Then at the trial readiness conference once the Court, the people confirmed that they had their witnesses ready and they were ready to proceed for trial, that she indicated that she wanted to tell me what really happened and she began to say that she was present there was an assault that she was actually the victim of the assault and she gave me a list of witnesses who would verify that.

"I spoke to some of the witnesses that I could get a hold of and that was, I believe your Honor was on the trial readiness conference of this matter was -- I am sorry, your Honor."

After the court informed counsel that date was January 8, 2016, counsel continued:

"There had been a no time waiver.  I indicated to her that this was late in the process and that we were going to trial on the 21st and basically she had given me less than two weeks to prepare this for trial and that she was giving me a different version of the facts.  I don't know what the truth is at this point and it places me in an ethical dilemma about whether or not I am going to present or purge her testimony and the ethics of my profession are I cannot do that.

---

[2]  This hearing was held on January 21, 2016.

4

"So I have tried to explain this to Ms. Hayes about her witnesses, about the new version of what she is telling me and that it places me in a very prickly position as her advocate.

"There is -- in any event, your Honor, that is where I am with the case, at this point. I can have her testimony in the narrative and I am -- I have indicated to her that I have that her witnesses will not help her because I don't believe that some of the people she is alleging were there were actually there, because there is no indication in the discovery anywhere that the people she is indicating that are witnesses for her were actually at the incident involved."

After determining defense counsel had nothing more to add, the court called the prosecutor back into chambers.

On January 27, 2016, after the first witness testified, the trial court informed defendant of her right to testify as follows:

"All right. Ms. Hayes, you don't have to make this decision right now. You have a Constitutional right to testify in this case. You also have a Constitutional right not to testify. You have a privilege against self-incrimination, no one can call you as a witness. You have a right to testify over your attorney's recommendation not to or objection to.

"Your attorney has indicated that he has an ethical concern that he put on this record that prohibit[s] him, based on what he has put on the record, from participating in the examination of you in front of a jury. So if you do choose to testify, then basically Mr. Nelson[3] will let me know that when the People conclude their case when it's appropriate for your decision to have been made, and you will be called to the witness stand again, if you so choose. And I will just simply turn to you and say you may now testify. He may not ask you questions.

---

**3** Defense counsel.

"Mr. Neiman[4] can cross-examine you. If you choose to testify and he objects to your testimony, you must stop talking until I can rule on the objection. You must honor my instructions, if you choose to testify, because if you testify as to things over objection continually, then I may take action. Keep in mind that if you choose to testify and it is determined that you willfully lied on the witness stand, you could be charged with perjury.

"Again, I don't know the underlying facts or circumstances, I just know what your attorney has put on the record. So I just wanted to clarify all of that with you here on the record so you can then at the conclusion of Mr. Neiman's case, outside the presence of the jury, you can let me know whether or not you wish to testify. I believe that is going to happen fairly quickly because he has two witnesses, he has the alleged victim, her name I can't recall."

The prosecutor gave L.B.'s name, and the court told defendant that a body shop estimator will testify as well, so defendant would have to make her decision at around 10:30 a.m. Defendant said she understood and exclaimed, "I just don't understand why I can't have any other witnesses."

At the conclusion of the prosecution's case, defense counsel stated defendant would not be testifying.

After the verdict but before sentencing, the trial court relieved Nelson as defense counsel and appointed new counsel for defendant. New counsel subsequently filed a new trial motion alleging several grounds including ineffective assistance of counsel. Defendant filed a declaration in support of the motion. She stated in her declaration that when Nelson conveyed the prosecution's offer, she rejected it, telling Nelson, ". . . I wasn't taking time for something I didn't do and that I was not there." On December 21,

---

**4** The prosecutor.

6

2015, when she began to talk about the case with Nelson, "he told me I had lied to him and he was not going to put me on the stand." Defendant gave Nelson a list of witnesses before the January 8, 2016, trial readiness conference, but learned that "[o]f the five witnesses on my list Mr. Nelson spoke briefly with one of them. Neither Mr. Nelson or a defense investigator spoke with the others." On the first day of trial, January 21, 2016, defendant told Nelson she wanted to testify. According to the declaration, Nelson "told me if I did testify I would be committing perjury and he could not allow that and if he did he could lose his license. Additionally, three of the people from the witness list were present and Mr. Nelson said he would not have them testify becausee [*sic*] they were not credible."

The trial court denied the new trial motion.

**B**

A defendant has a constitutional right to testify in his or her own defense, but does not have a right to testify falsely. (*Nix v. Whiteside* (1986) 475 U.S. 157, 173 [89 L.Ed.2d 123, 138].) A defense attorney has an obligation to act as a conscientious and diligent advocate, but "[i]t is utterly reprehensible for an attorney at law to actively procure or knowingly countenance the commission of perjury. [Citation.]" (*In re Jones* (1971) 5 Cal.3d 390, 400.) A defendant's right to testify does not trump an attorney's ethical responsibilities. (*Whiteside*, at p. 173 [89 L.Ed.2d at p. 138].)

" '[A]n attorney owes no duty to offer on his client's behalf testimony which is untrue.' [Citations.] Stated slightly differently, an attorney, including a criminal defense attorney, has a 'special duty . . . to prevent and disclose frauds upon the court . . . .' [Citation.]" (*People v. Riel* (2000) 22 Cal.4th 1153, 1217 (*Riel*).) "A ' "lawyer should not conclude that testimony is or will be false unless there is a firm factual basis for doing so. Such a basis exists when facts known to the lawyer or the client's own statements indicate to the lawyer that the testimony or other evidence is false." ' " (*Ibid*.)

7

The defendant in *Riel* entered a plea of guilty and later moved for a new trial on the ground of newly discovered evidence, that is, information from a potential witness that would be favorable to the defense. (*Riel, supra*, 22 Cal.4th at p. 1215.) The defense had not obtained the witness's declaration by the time of the hearing on the new trial motion, and both defense attorneys stated they had a conflict with respect to the witness that could not be discussed in open court or in the presence of the prosecutor. (*Ibid.*) At an in camera hearing absent the prosecutor, a defense attorney explained that the witness had made various statements about the case but stated that he would give a very favorable statement, which would be a lie. The defense attorneys were not interested in producing perjured testimony and the witness then indicated that the favorable statement might not be a lie. (*Ibid.*) The defense attorneys explained to the court that they were not willing to produce potentially perjured testimony but did not reveal the witness's specific statements. (*Id.* at pp. 1215-1216.) In open court, the court denied the new trial motion. (*Id.* at p. 1216.) On appeal, the defendant claimed counsel rendered ineffective assistance in failing to present the evidence. (*Ibid.*) Noting that the defense attorneys were "intentionally vague," the Supreme Court rejected the claim, "hypothesiz[ing] on this record that [the witness] may have said something that fully justified their actions . . . ." (*Id.* at p. 1217.) "Although attorneys may not present evidence they know to be false or assist in perpetrating known frauds on the court, they may ethically present evidence that they suspect, but do not personally know, is false. Criminal defense attorneys sometimes have to present evidence that is incredible and that, not being naive, they might personally disbelieve. Presenting incredible evidence may raise difficult tactical decisions--if counsel finds evidence incredible, the fact finder may also--but, as long as counsel has no specific undisclosed factual knowledge of its falsity, it does not raise an ethical problem." (*Ibid.*) *Riel* held that there was "no basis to find that counsel acted other than as diligent advocates consistent with ethical constraints." (*Id.* at p. 1218.)

8

In *People v. Bolton* (2008) 166 Cal.App.4th 343 (*Bolton*), four days before trial, Bolton's third appointed counsel, Cline, informed the trial court he had a conflict of interest with his client. (*Id.* at pp. 350, 351.) Cline informed the court Bolton started making threatening calls to his office after a blowup in the courtroom. (*Id.* at p. 351.) Cline also told the court Bolton expressed his desire to represent himself but changed his mind a few days later. (*Ibid.*) Bolton asked Cline to call him as a witness so he could "testify that one of the victims had a razor, even though Bolton had never mentioned this before, and none of the witnesses could corroborate this story," causing Cline to be concerned defendant would perjure himself. (*Ibid.*) Cline also believed Bolton was making it difficult for Cline to locate Bolton's girlfriend, so she would be unavailable to provide testimony that would contradict his proposed testimony. (*Ibid.*)

The trial court relieved Cline and forced Bolton to make a choice between his right to counsel and his right to a speedy trial. (*Bolton*, *supra*, 166 Cal.App.4th at p. 356.) Bolton "chose" to represent himself rather than agree to a continuance, and was subsequently convicted by the jury. (*Id.* at pp. 349-350.) The appellate court reversed his convictions, holding that under these circumstances, Bolton's waiver of his right to the assistance of counsel was not voluntary. (*Id.* at p. 361.) In support of its ruling, the *Bolton* court found: "Despite Cline's assertions, it was not at all clear that Bolton was in fact going to perjure himself. While Cline may have doubted Bolton's claim that one of the victims had a razor blade, Cline did not *know* that this was false. In addition, Cline had only a hunch that Bolton was 'hiding' his girlfriend from Cline. Further, Bolton was not given an opportunity to respond to Cline's claims before the court determined that a conflict existed and agreed to relieve Cline." (*Id.* at p. 357.)

Relying primarily on *Riel* and *Bolton*, defendant asserts Nelson's claim of an ethical dilemma regarding her potential testimony was baseless because he had "no firm basis to believe" she would commit perjury if she testified. She finds this deprived her of

9

her right to assistance of counsel during the in camera proceeding. Finding this to be a critical stage of the proceedings, defendant concludes reversal is mandatory.

In *People v. Johnson* (1998) 62 Cal.App.4th 608 (*Johnson*), the appellate court discussed the "problem [that] arises . . . where the defendant asserts his right to testify and his attorney knows or suspects the defendant will give perjured testimony." (*Id*. at pp. 618-619, fn. omitted.) The court identified various solutions to the problem (*id*. at pp. 620-624), including the "narrative approach," under which "the attorney calls the defendant to the witness stand but does not engage in the usual question and answer exchange. Instead, the attorney permits the defendant to testify in a free narrative manner. In closing arguments, the attorney does not rely on any of the defendant's false testimony." (*Id*. at p. 624.) The court ultimately determined "the narrative approach represents the best accommodation of the competing interests of the defendant's right to testify and the attorney's obligation not to participate in the presentation of perjured testimony since it allows the defendant to tell the jury, in his own words, his version of what occurred, a right which has been described as fundamental, and allows the attorney to play a passive role." (*Id*. at p. 629.) The California Supreme Court has found the narrative approach appropriate so long as defense counsel does not inform the fact finder that he or she disbelieves defendant. (*People v. Guzman* (1988) 45 Cal.3d 915, 946, overruled on other grounds in *Price v. Superior Court* (2001) 25 Cal.4th 1046, 1069, fn. 13.)

Defendant asserts the *Johnson* court's reference to defense counsel knowing or suspecting defendant will give perjured testimony is either dicta or no longer good law after *Riel*.

In *Johnson,* "[d]efense counsel told the court he had 'an ethical conflict' with Johnson about Johnson's desire to take the stand and testify. Defense counsel explained, 'I cannot disclose to the court privileged communications relating to that, but I'm in a position where I am not willing to call Mr. Johnson as a witness despite his desire to

10

testify.'  In response to the court's question, Johnson indicated defense counsel had accurately described the situation and defense counsel indicated he would '[n]ot voluntarily' call Johnson as a witness." (*Johnson, supra*, 62 Cal.App.4th at p. 613.) After the trial court, misunderstanding the situation, told the defendant that his counsel had decided it was not in his interests to testify, counsel clarified that this was not a matter of tactics but "an ethical conflict," and counsel "would be ethically barred from calling him as a witness under the law as I have come to know it and very specifically researched it regarding this particular issue." (*Ibid*.)  The trial court ruled that the defendant would not be allowed to testify. (*Id*. at pp. 613-614.)  The Court of Appeal found the trial court erred in precluding the defendant from testifying, but the error was harmless beyond a reasonable doubt. (*Id*. at p. 636.)

The *Johnson* court's reference to counsel knowing or suspecting the defendant giving perjured testimony was not dicta.  The defense counsel in *Johnson* informed the trial court that the defendant testifying would create an ethical conflict with his client, but did not specify how the defendant would perjure himself, counsel's confidence in this assertion, or what evidence he had to justify it.  If the phrase "knows or suspects" is limited to knows, then the statement provided by counsel would not support the narrative testimony approach suggested by the *Johnson* court.  *Johnson* supports the use of narrative testimony when defense counsel knows or suspects the defendant will give perjured testimony.

*Riel* does not, as defendant suggests, limit *Johnson*.  *Riel* did not address presenting narrative testimony but rather not presenting the allegedly perjured testimony at all.  The Supreme Court's approach in *Riel*, where counsel must present evidence unless it is known to be false, parallels *Johnson*, which sanctioned the use of narrative testimony where counsel knows or suspects defendant will commit perjury, but precludes invoking the conflict to prevent the defendant from testifying.

11

*Bolton* reinforces *Johnson's* continued validity.  Discussing what counsel should do when the defendant is suspected of intending to commit perjury, the *Bolton* court stated: "In [*Johnson*], this court considered the options available to a criminal defense attorney when the defendant asserts his or her right to testify, and the attorney knows or suspects that the defendant intends to give perjured testimony.  [Citation.]  After reviewing various options, including withdrawing from representation, the *Johnson* court concluded that calling the defendant to the witness stand and permitting the defendant to 'testify in a free narrative manner' is the solution that 'best accommodates the competing interests of the defendant's constitutional right to testify and the attorney's ethical obligations.'  [Citation.]  [¶] We reaffirm the conclusion of the *Johnson* court that where an attorney knows or suspects that his client intends to give false testimony, the 'narrative approach' best accommodates the interests of both the defendant and the attorney, who is obligated 'not to participate in the presentation of perjured testimony.'  [Citation.]" (*Bolton*, *supra*, 166 Cal.App.4th at pp. 357-358, citing *Johnson*, *supra*, 62 Cal.App.4th at pp. 618-619, 622, 624.)

Trial counsel did not know defendant was going to commit perjury, but suspected it and gave reasons for that suspicion.  Those reasons, defendant's sudden and dramatic change in her narrative of events and counsel's difficulty in finding the supporting witnesses she claimed to have, support that suspicion and the trial court's deference to it.  Allowing defendant to testify in narrative form and informing her of that decision did not deprive her of the right to counsel.

## II

### A

Defendant was charged with five prison priors:  (1) a November 10, 1993, conviction for unlawfully driving or taking a vehicle (Veh. Code, § 10851) in Colusa County; (2) a May 25, 1995, conviction for possession of a controlled substance (Health & Saf. Code, § 11377, subd. (a)) in Yolo County; (3) a January 29, 1997, conviction for

12

receiving stolen property (§ 496, subd. (a)) in Sacramento County; (4) a forgery (§ 470, subd. (a)) conviction on June 15, 2004, in Tehama County; and (5) a burglary conviction (§ 459) on October 15, 2010, in Tehama County. She admitted the five prison priors on January 26, 2016.

On April 14, 2016, the Yolo County Superior Court granted defendant's section 1170.18 petition to redesignate the 1995 possession of a controlled substance conviction to a misdemeanor.

On June 6, 2016, following the denial of defendant's new trial motion,[5] defense counsel informed the trial court of "a new issue that just has arisen and it relates only to the sentencing." Counsel informed the court of the recent decision in *People v. Abdallah* (2016) 246 Cal.App.4th 736 (*Abdallah*) holding that a felony reduced to a misdemeanor under Proposition 47 before sentencing cannot be used to support a prison prior. Unsure that the section 1170.18 petition had been granted, counsel sought a continuance, which the trial court granted over the prosecutor's objection. While defendant asked for a six-week continuance, the trial court granted a continuance to June 29, 2016, and "if that turns out not to be the case, you can file something ahead of time."

Defendant filed a motion for an additional continuance on June 24, 2016. The motion informed the court that the 1995 Yolo County conviction was reduced to a misdemeanor on April 14, 2016. Among the grounds for continuance was a pending section 1170.18 petition in Tehama County to redesignate the 2010 burglary conviction to a misdemeanor, and at a June 21, 2016, hearing on the section 1170.18 petition, the matter was continued to July 26, 2016, because it involved an issue pending before the

---

[5] Defendant's appointed trial counsel was relieved and new counsel was appointed on March 2, 2016. New counsel filed a motion for new trial on May 10, 2016, which the trial court denied on June 6, 2016.

California Supreme Court. The motion asked for a continuance to resolve whether the Tehama and Sacramento convictions were subject to section 1170.18.

The trial court denied the motion and sentenced defendant on June 29, 2016. It struck the prison prior allegations based on the 1995 and 2010 convictions, and imposed a seven-year eight-month state prison term.

On August 9, 2016, the Tehama County Superior Court granted defendant's section 1170.18 petition on the 2010 conviction.

**B**

Defendant contends the order granting her section 1170.18 petition on the 2010 Tehama County conviction prevents it from satisfying the five-year "washout" provision of section 667.5, subdivision (b), thereby invalidating all three remaining prison priors.[6] She argues this follows as a matter of equal protection and statutory interpretation as to section 1170.18. She additionally contends the trial court abused its discretion in denying her continuance motion.

"On November 4, 2014, the voters enacted Proposition 47, the Safe Neighborhoods and Schools Act (hereafter Proposition 47), which went into effect the next day. (Cal. Const., art. II, § 10, subd. (a).)" (*People v. Rivera* (2015) 233 Cal.App.4th 1085, 1089.) Proposition 47 created a resentencing provision, codified at section 1170.18, which provides that a person currently serving a sentence for certain designated felonies may petition for recall of the sentence to reduce felonies to misdemeanors. A felony reduced to a misdemeanor under section 1170.18 "shall be considered a misdemeanor for all purposes, except that resentencing shall not permit that

---

[6] "According to the 'washout' rule, if a defendant is free from both prison custody and the commission of a new felony for any five-year period following discharge from custody or release on parole, the [prior prison term] enhancement does not apply." (*People v. Fielder* (2004) 114 Cal.App.4th 1221, 1229.)

14

person to own, possess, or have in his or her custody or control a firearm or prevent his or her conviction under Chapter 2 (commencing with Section 29800) of Division 9 of Title 4 of Part 6." (§ 1170.18, subd. (k).)

If a felony is reduced to a misdemeanor before sentencing, then it cannot be used either as the felony underlying a prison prior or to prevent a prison prior from being washed out. (*People v. Warren* (2018) 24 Cal.App.5th 899, 903-904; *People v. Call* (2017) 9 Cal.App.5th 856, 858; *People v. Kindall* (2016) 6 Cal.App.5th 1199, 1201; *Abdallah*, *supra*, 246 Cal.App.4th at p. 740.) In a case decided after briefing in this case, the California Supreme Court held, "Proposition 47's mandate that the resentenced or redesignated offense 'be considered a misdemeanor for all purposes' (§ 1170.18, subd. (k)) permits defendants to challenge felony-based section 667.5 and 12022.1 enhancements when the underlying felonies have been subsequently resentenced or redesignated as misdemeanors." (*People v. Buycks* (July 30, 2018, S231765) __ Cal.5th __, __ [2018 Cal. LEXIS 5486, *4] (*Buycks*).) As relevant here, a defendant can challenge the prison prior under "the retroactivity principle of *In re Estrada* (1965) 63 Cal.2d 740" when the conviction is not yet final on appeal. (*Id.* at p. __ [2018 Cal. LEXIS 5486, *5].) Although the trial court did not have the benefit of *Buycks* when it ruled on the second continuance motion, *Buycks* nonetheless applies to this case, which is not final.[7]

Section 1050, subdivision (e) states: "Continuances shall be granted only upon a showing of good cause. Neither the convenience of the parties nor a stipulation of the parties is in and of itself good cause." The court considers the benefit the moving party

---

[7] While a defendant whose conviction is subject to Proposition 47 is not entitled to automatic resentencing on appeal (*People v. DeHoyos* (2018) 4 Cal.5th 594, 597), *Buycks* nonetheless supports a remand for resentencing where, as here, defendant moved for a continuance to allow for a ruling on the section 1170.18 petition that implicated the validity of his prison priors.

15

anticipates; the likelihood that benefit will result; the burden on witnesses, jurors, and the court; and whether granting the continuance will result in substantial justice. (*People v. Doolin* (2009) 45 Cal.4th 390, 450.) On appeal, we review the denial of a motion for continuance for abuse of discretion. (*People v. D'Arcy* (2010) 48 Cal.4th 257, 287.)

" ' " 'The discretion of a trial judge is not a whimsical, uncontrolled power, but a legal discretion, which is subject to the limitations of legal principles governing the subject of its action, and to reversal on appeal where no reasonable basis for the action is shown. [Citation.]' " ' " (*People v. Jacobs* (2007) 156 Cal.App.4th 728, 738.) There is no mechanical test for determining whether the denial of a continuance is an abuse of discretion; the answer " ' "must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge . . . ." ' " (*People v. Panah* (2005) 35 Cal.4th 395, 426.)

Continuing sentencing until the Tehama County Superior Court ruled on the pending section 1170.18 petition was critical to determining whether defendant could be sentenced on the prison priors. If the 2010 prior that was the subject of the section 1170.18 petition was redesignated a misdemeanor, then, under *Buycks* and *Abdallah*, it would be treated as a misdemeanor " 'for all purposes' " and therefore would not be a felony under the five-year washout provision. (*Abdallah*, *supra*, 246 Cal.App.4th at p. 746.) This would cause defendant's remaining prison priors to wash out as it would have been more than five years since her last felony conviction. By denying the continuance motion, the trial court guaranteed defendant would be sentenced on the prison priors (absent the exercise of the court's discretion to strike a prior) whether or not the 2010 prior was redesignated a misdemeanor in the future.

In denying the continuance, the trial court noted that defendant had a year and a half since the passage of Proposition 47 to reduce the priors to misdemeanors but did not do so. It also pointed out that substitute defense counsel came into the case four months ago. Finally, it noted a case titled, "*People v. Diaz*," which held that a prior felony

16

conviction remains a felony until designated a misdemeanor under section 1170.18 and where the Court of Appeal declined to stay the appeal until the defendant litigated the section 1170.18 petition in the trial court.

These reasons do not support the court's decision to deny the continuance. Defendant is not an attorney, and, before she was charged and provided with appointed counsel, could not be expected to file a section 1170.18 petition on her own. While she had counsel after she was charged in October 2015, until *Abdallah* was decided on April 19, 2016 (see *Abdallah, supra*, 246 Cal.App.4th at p. 736), there was no reason for trial counsel to file a section 1170.18 petition as to her priors. Substitute counsel acted diligently obtaining section 1170.18 relief on the Yolo County prior shortly before *Abdallah* was decided, and getting a section 1170.18 hearing on the 2010 Tehama County prior a little more than two months after *Abdallah*. Defendant was diligent in attempting to obtain section 1170.18 relief on her priors.

The trial court's reference to the *Diaz* decision adds nothing to support the denial. The only published opinion from a California court with that name addressing the subject matter discussed by the trial court is *People v. Diaz* (2015) 238 Cal.App.4th 1323, in which the Court of Appeal held that a defendant convicted and sentenced before Proposition 47's enactment can seek to reduce to a misdemeanor the felony underlying a prison prior only through a section 1170.18 petition. (*Diaz,* at p. 1328.) The *Diaz* court also declined to stay the appeal while the defendant filed a section 1170.18 petition. (*Diaz,* at p. 1338.) *Diaz* applies only in the context of a conviction and sentence before Proposition 47 was passed. It has no bearing on defendant's case where the trial, conviction, and sentence took place after Proposition 47 was passed. Staying an appeal while the lower court rules on a collateral motion raises a significant issue of appellate jurisdiction that is not present when, as here, the trial court is asked to stay sentence while another court in the same county rules on a matter potentially critical to defendant's sentence.

17

Granting the continuance would not significantly burden the court; the probation report was prepared months prior and the sentencing hearing was otherwise routine, with no witnesses and consuming little time. Nor would the prosecution be improperly burdened by the continuance, as the prosecutor assumed the continuance would be granted and submitted the matter without argument other than stating granting section 1170.18 relief would not necessarily wash out earlier priors.

Defendant would have obtained a more favorable result if the continuance was granted. In light of the minimal burden to the other parties, lack of adequate reasons for the denial, and the Supreme Court's decision in *Buycks*, we conclude the denial of the continuance motion was an abuse of discretion. We shall therefore reverse the sentence and remand for a new sentencing hearing.

## DISPOSITION

The sentence is reversed and the matter remanded for a new sentencing hearing. In all other respects, the conviction is affirmed.

/s/
Blease, Acting P. J.

We concur:

/s/
Butz, J.

/s/
Mauro, J.

18