[No. H008510. Sixth Dist. Nov. 22, 1991.]

PATRICK DUANE MURPHY, Plaintiff and Respondent, v.
A. A. PIERCE, as Director, etc., Defendant and Appellant.

COUNSEL

Daniel E. Lungren, Attorney General, Robert L. Mukai, Chief Assistant Attorney General, N. Eugene Hill, Assistant Attorney General, Jose R. Guerrero and Jane Zack Simon, Deputy Attorneys General, for Defendant and Appellant.

Barry D. Broad as Amicus Curiae on behalf of Defendant and Appellant.

Mel Grimes, Jr., for Plaintiff and Respondent.

OPINION

**BAMATTRE-MANOUKIAN, J.**—Patrick Duane Murphy (driver) claims it is unconstitutionally unfair that he faces a four-month suspension of his driver's license by the Department of Motor Vehicles (DMV) for his first drunk driving offense when he would face only a one-month suspension followed by a five-month restriction if he had a commercial driver's license. The superior court agreed, finding this legislative distinction a denial of equal protection because it lacks a rational basis. The court ordered A. A. Pierce, as Director of the DMV, to either reinstate driver's driving privilege or hold a hearing considering imposition of a restriction. DMV appeals from the judgment granting driver's petition for writ of mandate. We granted the

California Teamsters Public Affairs Council (Teamsters) leave to file an amicus curiae brief supporting the DMV. For the reasons stated below, we will reverse the judgment.

Driver is a captain for the Cathedral City Fire Department. One of the conditions of his employment is a valid California driver's license. His license is not a commercial one. On December 11, 1990, he was stopped for weaving at 11:34 p.m. He smelled of alcohol, his speech was slurred, his gait was unsteady, his eyes were "bloodshot/watery," and he had a positive horizontal nystagmus. Breath tests revealed his blood-alcohol level to be .17 percent. The arresting officer confiscated driver's license and gave him a 45-day temporary license. The officer also gave driver notice of an "administrative per se order of suspension" to take effect upon expiration of the temporary license.

On January 17, 1991, driver pled guilty to driving with a blood-alcohol level exceeding .08 percent in violation of Vehicle Code section 23152, subdivision (b),[1] and was sentenced to five days in jail, a $950 fine, five years' probation, and attending an alcohol program. In addition to these criminal penalties, the DMV intends to impose an administrative penalty of a four-month suspension of his driving privilege.

Section 13353.2 authorizes the DMV to immediately suspend the driving privilege of anyone found driving with a blood-alcohol level of .08 or more. The driver is entitled to a presuspension hearing (§ 13353.2, subd. (d)) on limited issues (§ 13558, subd. (c)(2)). Driver here waived this hearing. Section 13353.3, subdivision (b)(1), provides for a four-month suspension for first offenders, "[e]xcept as provided in Section 13353.6."[2] The exception in 13353.6 is for commercial driver's licensees. If a commercial licensee's first drunk driving offense occurs when the driver "was not operating a commercial vehicle, as defined in Section 15210" (subd. (c)), the administrative penalty is a 30-day suspension, followed by a 5-month restriction to

---

[1]Unspecified section references are to the Vehicle Code.

[2]Section 13353.3, subdivision (b)(1), provides: "Except as provided in Section 13353.6, if the person has not been convicted of a separate violation of Section 23103 as specified in Section 23103.5, Section 23152, or Section 23153 of this code, or Section 191.5 or paragraph (3) of subdivision (c) of Section 192 of the Penal Code, or the person has not been administratively determined to have refused chemical testing pursuant to Section 13353 or to have been driving with an excessive concentration of alcohol pursuant to Section 13353.2 on a separate occasion, which offense or occurrence occurred within seven years of the occasion in question, the person's privilege to operate a motor vehicle shall be suspended for four months."

driving "to and from, and in the course and scope of, the person's employment" (subd. (a)(1)).[3] Either administrative penalty may be converted into a 30-day suspension followed by a 60-day license restriction entitling the person to drive to an alcohol education program upon enrollment in and successful completion of such program. (§§ 13353.4, 13353.7.)

■ Both the federal and state Constitutions prohibit denying "equal protection of the laws." (U.S. Const., 14th Amend.; Cal. Const., art. I, § 7.) This requires that " ' "persons similarly situated with respect to the legitimate purpose of the law receive like treatment." ' " (*In re Eric J.* (1979) 25 Cal.3d 522, 531 [159 Cal.Rptr. 317, 601 P.2d 549].) ■ "The first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner." (*Id.* at p. 530, italics in original; *In re Arthur W.* (1985) 171 Cal.App.3d 179, 190 [217 Cal.Rptr. 183].) DMV contends that commercial licensees are not in the same situation as regular, noncommercial licensees.

Generally those who drive on California's highways must have driver's licenses. (§ 12500.) All drivers must pass a driving examination (§ 12803) testing the applicants' senses, practical skills, and knowledge of the rules of the road (§§ 12804, subd. (a)(1), 12804.9, subd. (a)(1)). Those interested in driving large vehicles, including trucks, must also pass an examination appropriate to the type of vehicle they will be driving. (§§ 12804, subd. (b), 12804.9, subd. (b).) A commercial license is required in order to operate a commercial motor vehicle. (§ 15250, subd. (a).) Commercial vehicles include double trailers and passenger vehicles designed to carry more than 10 persons. (§ 15278.) To obtain a commercial license a driver must pass

---

[3] Section 13353.6 provides: "(a) If the person's driver's license is a commercial driver's license, as defined in Section 15210, and if the person has not had a separate violation of Section 23103 as specified in Section 23103.5, Section 23152, or Section 23153 of this code, or Section 191.5 or paragraph (3) of subdivision (c) of Section 192 of the Penal Code which resulted in a conviction, and if the person's privilege to operate a motor vehicle has not been previously suspended or revoked pursuant to Section 13353 or 13353.2 for an offense which occurred on a separate occasion, notwithstanding Section 13551, the department shall, upon receiving the officer's sworn statement and the receipt of the person's driver's license and after review pursuant to subdivision (d) of Section 13353.2, suspend the person's privilege to operate a motor vehicle for 30 days, and then reissue the person a commercial driver's license with restrictions, as follows:

"(1) The restricted commercial driver's license shall authorize the operation of a motor vehicle only to and from, and in the course and scope of, the person's employment.

"(2) The term of the restricted license is 30 days after the date that the order of suspension is effective pursuant to Section 13353.3 until six months after that date.

"(b) The person may be issued an unrestricted commercial driver's license after the term of restriction under this section.

"(c) This section applies only to the holder of a commercial driver's license who was not operating a commercial vehicle, as defined in Section 15210, at the time of the offense."

written and driving tests for commercial vehicles. (§ 15250, subd. (b); 15275, subd. (a).) Commercial licensees must also have a medical certificate no more than two years old. (§ 12804.9, subd. (c).)

A regular license may be suspended for six months following a first drunk driving conviction (§§ 13352, subd. (a)(1), 23160, subd. (b)) and for eighteen months following a second drunk driving conviction (§§ 13352, subd. (a)(3), 23165). A commercial licensee cannot operate a commercial vehicle for one year following a first conviction of operating a commercial motor vehicle while under the influence of alcohol or a controlled substance. (§ 15300, subd. (a)(1).) A commercial licensee's second such conviction results in a suspension of the commercial license for life. (§ 15302, subd. (a).) Commercial licensees must notify their employers of any conviction involving the safe operation of a motor vehicle (§ 15222) and of any suspension, revocation, or cancellation of their licenses (§ 15224). An employer is not to allow a commercial licensee with a suspended, revoked, or canceled license to drive a commercial vehicle. (§ 15240.)

 We do not regard commercial driver's licensees in general as similarly situated with respect to regular, noncommercial licensees. They are a separate class of more regulated drivers, driving different types of vehicles requiring different driving skills. Commercial licensees face more severe penalties for drunk driving while working. (Cf. *In re Arthur W., supra,* 171 Cal.App.3d at pp. 190-191—minor and adult drivers are not similarly situated.) Commercial licensees in general are more likely to need their licenses to earn their daily sustenance and shelter, although the daily wages of other licensees may also depend on their driving. Driver contends he is similarly situated because his employment is conditioned on a valid driver's license. Even if this one aspect of his situation is identical to a commercial licensee, however, he is not otherwise subject to the same regulations and the same penalties. Thus, we do not regard driver as similarly situated.

 In any event, even if driver is similarly situated, the next step of the equal protection inquiry is whether there is a rational basis for this differential treatment of licensees. Driver does not contend suspension of his license requires the strict judicial scrutiny afforded to a suspect classification or infringement of a fundamental right. (*In re Demergian* (1989) 48 Cal.3d 284, 291-292 [256 Cal.Rptr. 392, 768 P.2d 1069]; *Adoption of Kay C.* (1991) 228 Cal.App.3d 741, 753-754 [278 Cal.Rptr. 90]; *Peretto* v. *Department of Motor Vehicles* (1991) 235 Cal.App.3d 449, 455 [1 Cal.Rptr.2d 392].) While the privilege of driving is important, it is not regarded as a fundamental right. (*Alderette* v. *Department of Motor Vehicles* (1982) 135 Cal.App.3d 174, 177-178 [185 Cal.Rptr. 172]; *In re Arthur W., supra,* 171 Cal.App.3d 179, 186-187; cf. *Hernandez* v. *Department of Motor Vehicles* (1981) 30 Cal.3d 70, 78-84 [177 Cal.Rptr. 566, 634 P.2d 917]—due process analysis.)

■ As this court explained in another context, "Under this standard, we must determine whether the Legislature could have reasonably found that the challenged classification would promote a legitimate state purpose. [Citations.] 'If the classification has some "reasonable basis," it does not offend the Constitution simply because the classification "is not made with mathematical nicety or because in practice it results in some inequality." [Citation.] . . . "A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." [Citation.]' " (*Adoption of Kay C.*, *supra*, 228 Cal.App.3d at pp. 754-755.)

■ Here an obvious explanation for the differential treatment of commercial and regular licensees is that the employment of the former, in general, is more likely to depend on their ability to drive. The First District Court of Appeal in *Peretto*, *supra*, 235 Cal.App.3d. 449, recently rejected the same equal protection challenge to section 13353.6, stating, "[t]he Legislature may reasonably have concluded that the holders of commercial licenses as a group depend more upon those licenses for their employment and economic survival than do the holders of noncommercial licenses, even though individuals in many occupations must drive noncommercial vehicles as part of their employment." (235 Cal.App.3d at p. 458.) The Legislature may have regarded as equivalent impacts a one-month suspension plus a five-month restriction suspension on one who drives to survive and a four-month suspension on one who toils in a different occupation. Driver contends that some noncommercial licensees do drive to survive while some commercial licensees do not. While this is undoubtedly true, it does not render irrational an assumption that a greater percentage of commercial licensees than noncommercial licensees depend on their licenses for their livelihood. We consider this to provide a rational basis rendering constitutional the differential punishment of commercial and noncommercial licensees for first drunk driving offenses while not operating commercial vehicles.[4]

The judgment is reversed.

Agliano, P. J., and Elia, J., concurred.

---

[4]We have already granted the DMV's request for judicial notice of five documents mostly intended to suggest legislative intent. Teamsters has also requested judicial notice of two more documents. We also grant this request.