**Opinion issued January 18, 2024**



In The

# Court of Appeals

### For The

# First District of Texas

———————————

### NO. 01-23-00251-CR

———————————

## DANNY RAY MITCHELL, Appellant

## V.

## THE STATE OF TEXAS, Appellee

---

### On Appeal from the County Court at Law No. 2
### Johnson County, Texas[1]
### Trial Court Case No. 22-04101

---

[1] Per the Texas Supreme Court's docket-equalization powers, this appeal was transferred from the Tenth Court of Appeals to this court on March 21, 2023. *See* TEX. GOV'T CODE § 73.001; Order Regarding Transfer of Cases from Courts of Appeals, Misc. Docket No. 23-9017 (Tex. Mar. 21, 2023). We are unaware of any relevant conflict between the Tenth Court's precedent and ours. *See* TEX. R. APP. P. 41.3.

# MEMORANDUM OPINION

Danny Ray Mitchell was convicted of speeding in a City of Burleson municipal court. Proceeding pro se, he appeals his conviction on several grounds. We affirm the trial court's judgment.

## BACKGROUND

Police officer B. Meugniot pulled Mitchell over for speeding on East Renfro Street in the City of Burleson. Meugniot's radar showed Mitchell was driving at a speed of 57 miles per hour where the posted speed limit, according to Meugniot, was 45 miles per hour. Meugniot issued Mitchell a citation for speeding.

Mitchell contested the citation at a bench trial in municipal court. At trial, Officer Meugniot testified to the preceding facts. Meugniot testified that driving 57 miles per hour in a 45-mile-per-hour zone was not a reasonable and prudent speed at that time and in that location. The State also played Meugniot's dash cam video of the traffic stop.

On cross-examination, Mitchell repeatedly asked Meugniot whether he was aware that the speed limit was posted as 45 miles per hour heading eastbound but 50 miles per hour when heading westbound in that area, as Mitchell was when he was pulled over. Meugniot disagreed and stated that within the Burleson city limits, the speed limit is 45 miles per hour, although the speed increases outside of the city limits. Meugniot said he evaluated Mitchell's speed within the city limits.

The trial court did not admit the photos Mitchell offered of what he claimed were the applicable speed limit signs because Mitchell failed to authenticate the photos. Mitchell did not offer any other evidence or present any witnesses. The trial court found Mitchell guilty. Mitchell moved for a new trial, but the trial court denied the motion.

Mitchell appealed to the county court at law. The county court affirmed the trial court's judgment, concluding Mitchell had not preserved error on any of the issues he raised in his appeal brief. Mitchell then appealed to this court.

## DISCUSSION

We first note that Mitchell filed a pro se brief. Although appellate courts "construe pro se pleadings and briefs liberally, a pro se litigant is still required to follow the same rules and laws as litigants represented by a licensed attorney." *Canada v. State*, 547 S.W.3d 4, 10–11 (Tex. App.—Austin 2017, no pet.) (quoting *Williams v. State*, No. 05-12-01015-CR, 2013 WL 4033640, at *2 (Tex. App.—Dallas Aug. 7, 2013, pet. ref'd) (mem. op., not designated for publication)).

Mitchell appealed the municipal court's judgment to the county court at law. To appeal from a municipal court of record's judgment, the defendant must file a motion for new trial setting forth the points of error of which he complains. TEX. GOV'T CODE § 30.00014(c). The reviewing court, in this case the county court at law, "sits as an appellate court and considers arguments addressing any errors shown

in the municipal court record." *Canada*, 547 S.W.3d at 11 (quoting *Nelson v. State*, Nos. 12-10-00263-CR & 12-10-00266-CR, 2011 WL 2638738, at *1 (Tex. App.— Tyler June 30, 2011, no pet.) (mem. op., not designated for publication)).

After the reviewing court considers the appeal, a defendant may seek further appellate review with a court of appeals under certain circumstances. TEX. GOV'T CODE § 30.00027(a) (defendant has right to appeal to court of appeals if he was assessed fine exceeding $100 and reviewing court affirms). The record and briefs presented to the reviewing court are the record and briefs on appeal to the court of appeals. *Id.* § 30.00027(b); *Canada*, 547 S.W.3d at 11. Although the Government Code does not specifically address how a court of appeals should review an appeal from a judgment by a municipal court of record to account for the intervening appellate determination, the limitations imposed on the record and the briefing indicate the legislature intended the review by the court of appeals to be a second appellate review, independent of the determinations made by the first reviewing court and limited to the same challenges presented to the first reviewing court regarding the municipal court's judgment. *Canada*, 547 S.W.3d at 12.

As we construe Mitchell's brief, Mitchell has raised seven issues on appeal: (1) an equal-protection violation because he was not eligible for probation or defensive driving because he has a commercial driver's license; (2) a due-process violation because the prosecutor did not investigate his claim that the posted speed

4

limit was actually 50 miles per hour; (3) a due-process violation because the prosecutor did not disclose exculpatory evidence; (4) error in the trial court's ruling that sustained the State's objection to his evidence so that he could not admit the evidence; (5) a due-process violation because he was convicted based on false testimony; (6) a civil-rights violation because he can no longer drive the posted speed limit; and (7) a challenge to the sufficiency of the evidence supporting his conviction.

## Preservation of Error

### *Applicable Law*

Generally, to preserve a complaint for appellate review, the record must show that the defendant made the complaint to the trial court by "timely request, objection, or motion" stating the grounds for the complaint with "sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context." TEX. R. APP. P. 33.1(a). The record must also show the trial court ruled or refused to rule on the request, objection, or motion. *Id.* No "hyper-technical or formalistic use of words or phrases" is required to preserve a complaint. *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012) (quoting *Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009)). But a party must "let the trial judge know what he wants, why he thinks he is entitled to it, and to do so clearly enough for the judge to understand him at a time when the judge is in the proper position to do

something about it." *Id.* (quoting *Pena*, 285 S.W.3d at 464). Preserving error is a "systemic requirement," and if error has not been preserved, we should not address the merits of that issue. *Ford v. State*, 305 S.W.3d 530, 532 (Tex. Crim. App. 2009). Most complaints, even constitutional errors, can be waived on appeal if not raised in the trial court. *Garza v. State*, 435 S.W.3d 258, 260–61 (Tex. Crim. App. 2014).

*Analysis*

The State asserts Mitchell did not preserve any of his complaints for appeal. The county court at law agreed with the State and affirmed the municipal court's judgment because Mitchell did not preserve error. However, the reporter's record and Mitchell's motion for new trial show he raised several of the issues in the trial court that he now raises on appeal, even though Mitchell did not make formal objections: his second issue, a due-process violation because the prosecutor did not investigate his claim that the posted speed limit was actually 50 miles per hour; his third issue, a due-process violation because the prosecutor did not disclose exculpatory evidence; his fourth issue, error in the trial court's ruling that sustained the State's objection to his evidence so that he could not admit the evidence; and his seventh issue, a challenge to the sufficiency of the evidence supporting his conviction. The record indicates Mitchell raised these issues before the trial court, and he thus preserved error for appeal.

However, the record does not show that Mitchell raised the following issues that he now asserts on appeal: his first issue, an equal-protection violation because he was not eligible for probation or defensive driving because he holds a commercial driver's license; his fifth issue, a due-process violation because he was convicted based on false testimony; and his sixth issue, a civil-rights violation because he can no longer drive the posted speed limit.

While Mitchell did not preserve error on his first issue, it is worth noting that, to assert an equal protection claim under the Fourteenth Amendment, a party must assert: (1) he was treated differently than other similarly situated parties; and (2) he was treated differently without a reasonable basis. *State v. Dinur*, 383 S.W.3d 695, 701 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Courts in other states have found a reasonable basis to treat drivers with commercial licenses differently from regular drivers for offenses related to driving. *See, e.g.*, *Wilson v. State ex rel. Office of Hearing Exam'r*, 841 P.2d 90, 96 (Wyo. 1992) (concluding no equal-protection violation in subjecting drivers with commercial licenses to different punishment for driving while intoxicated); *Murphy v. Pierce*, 1 Cal. App. 4th 690, 696, 2 Cal. Rptr. 2d 18, 21 (1991) (concluding no equal-protection violation in imposing longer suspension of driver's license after drunk driving offense for driver with commercial driver's license than for driver without).

Regarding his fifth issue, while error was not preserved, we note that false testimony is different from disputed testimony. When testimony is disputed, such as here where the testifying officer and the defendant gave different versions of the facts,[2] the factfinder must resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from the evidence presented. *See Carter v. State*, 620 S.W.3d 147, 149 (Tex. Crim. App. 2021). In this case, evidently the factfinder resolved the disputed evidence about the speed limit in the officer's favor.

Because the record does not show that Mitchell preserved error on his first, fifth, or sixth issues, we may not consider these issues on appeal. *See Ford*, 305 S.W.3d at 532. We turn now to the issues Mitchell preserved.

## Sufficiency of the Evidence

Construing his brief liberally, we understand Mitchell to be arguing that there was a lack of evidence to support his conviction. *See* TEX. R. APP. P. 38.9 (briefing rules to be construed liberally); *Canada*, 547 S.W.3d at 10–11 (pro se briefs to be construed liberally). Specifically, he argues the speed limit where the officer first observed him was 50 miles per hour, not 45 miles per hour.

---

[2] Again, Mitchell did not present evidence of his version of the facts, nor did he testify. Thus, there was no factual dispute to resolve, but even assuming Mitchell's questioning constituted a factual statement, it was the trial court's responsibility to resolve factual disputes. *See Carter v. State*, 620 S.W.3d 147, 149 (Tex. Crim. App. 2021).

### *Applicable Law*

To review the legal sufficiency of the evidence to support a conviction, we must view the evidence in the light most favorable to the verdict and ask whether any rational trier of fact could have found each element of the offense beyond a reasonable doubt. *Carter*, 620 S.W.3d at 149; *Hammack v. State*, 622 S.W.3d 910, 914 (Tex. Crim. App. 2021); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We must give deference to "the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Carter*, 620 S.W.3d at 149 (quoting *Jackson*, 443 U.S. at 319).

### *Analysis*

Mitchell was charged with driving a motor vehicle at a speed that was greater than was reasonable and prudent under the circumstances, specifically, driving 57 miles per hour when the posted speed limit was 45 miles per hour.

Officer Meugniot testified that he observed Mitchell driving 57 miles per hour in an area where the posted speed limit was 45 miles per hour. He testified this was not a reasonable and prudent speed under the circumstances. From this testimony, the trial court could have found beyond a reasonable doubt that Mitchell was speeding, and thus there was sufficient evidence to support Mitchell's conviction. *See Carter*, 620 S.W.3d at 149; *Hammack*, 622 S.W.3d at 914; *see also Murray v.*

9

*State*, 438 S.W.2d 916, 917 (Tex. Crim. App. 1969) (concluding there was legally sufficient evidence to support conviction from officer's testimony that he observed defendant speeding and clocked him at 70 miles per hour in 35-mile-per-hour zone); *Tollett v. State*, 219 S.W.3d 593, 601 (Tex. App.—Texarkana 2007, pet. ref'd) (concluding there was legally sufficient evidence to support conviction from officer's testimony that defendant was driving faster than posted speed limit).

Mitchell vehemently disputed that the posted speed limit was 45 miles per hour. He attempted to offer into evidence photos he had taken of the applicable speed limit signs. He repeatedly asserted that the speed limit was actually 50 miles per hour. But Mitchell did not testify, did not have any other witnesses familiar with the speed limit testify, and was not able to have his photos admitted into evidence, an issue we discuss below. Therefore, there was no evidence to support his claim that the speed limit in that area was 50 miles per hour. Even if Mitchell had introduced evidence to support his claim, it was the trial court's responsibility to resolve any conflicts in the testimony, and the trial court was entitled to believe the police officer's testimony. *See Carter*, 620 S.W.3d at 149.

In his brief, Mitchell asks this court to search Google Maps for the location of the speed limit sign or send officers to look. However, this court cannot investigate to determine facts. *See, e.g.*, *Manzi v. State*, 88 S.W.3d 240, 243 (Tex. Crim. App. 2002) (describing appellate courts' "traditional inability to find facts" and deference

10

to trial courts' determinations of fact). We must defer to the trial court's determination of fact if there is sufficient evidence the support that determination. In this case, there is.

Further, even if Mitchell had established the speed limit were 50 miles per hour, the police officer testified that Mitchell was driving at a speed of 57 miles per hour, so the trial court still could have found beyond a reasonable doubt that Mitchell was speeding.

We overrule Mitchell's seventh issue.

## Due Process

Next, Mitchell argues he was denied due process of law because the prosecutor did not fulfill her duty to investigate his claim that the posted speed limit was 50 miles per hour.

### *Applicable Law*

The Fifth and Fourteenth Amendments to the United States Constitution guarantee "due process of law." U.S. CONST. amends. V, XIV. The Texas Constitution likewise guarantees "due course of law." TEX. CONST. art. I, § 19. Under both constitutions, this means that the accused must be given "fundamental fairness necessary to due administration of justice." *Reese v. State*, 877 S.W.2d 328, 333 (Tex. Crim. App. 1994).

Due process requires the State to prove every element of the charged offense beyond a reasonable doubt. *Nisbett v. State*, 552 S.W.3d 244, 262 (Tex. Crim. App. 2018); *see also Jackson*, 443 U.S. at 316. But the State is not required to exclude every conceivable alternative theory to establish a defendant's guilt. *See Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012); *see also Turro v. State*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993) (explaining that evidence is not rendered insufficient simply because defendant presented different version of events).

*Analysis*

Mitchell argues the prosecutor should have investigated his claim that the posted speed limit was 50 miles per hour before trial. However, a prosecutor does not have an independent duty to investigate a defendant's version of events; due process requires that the prosecutor prove each element of the charged offense beyond a reasonable doubt. *Nisbett*, 552 S.W.3d at 262; *Merritt*, 368 S.W.3d at 525. We have already concluded the prosecution presented sufficient evidence to prove Mitchell was speeding beyond a reasonable doubt.

Mitchell cites several other statutes and rules in his brief that create duties for the prosecution. *E.g.*, TEX. CODE CRIM. PROC. art. 2.01 ("It shall be the primary duty of all prosecuting attorneys, including any special prosecutors, not to convict, but to see that justice is done. They shall not suppress facts or secrete witnesses capable of establishing the innocence of the accused."); *id.* art. 39.14(h) ("[T]he [S]tate shall

12

disclose to the defendant any exculpatory, impeachment, or mitigating document, item, or information in the possession, custody, or control of the [S]tate that tends to negate the guilt of the defendant or would tend to reduce the punishment for the offense charged."); TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 3.09, *reprinted in* TEX. GOV'T CODE, tit. 2, subtit. G., app. A (describing special responsibilities of prosecutor, including responsibility to timely disclose evidence that tends to negate guilt). But he has not cited any statute or rule requiring the prosecutor to investigate his claim. There is no due-process violation in the prosecutor's decision not to investigate Mitchell's claim. *See Merritt*, 368 S.W.3d at 525 ("It is the State's burden to prove each element of the offense beyond a reasonable doubt, not to exclude every conceivable alternative to a defendant's guilt.").

We overrule Mitchell's second issue.

**Withholding Exculpatory Evidence**

Mitchell also argues the prosecutor withheld exculpatory evidence, in violation of his constitutional due-process right as set out in *Brady v. Maryland*, 373 U.S. 83, 87 (1963) and in violation of Article 39.14 of the Code of Criminal Procedure. Specifically, the prosecutor did not disclose evidence responsive to his motion for discovery and the prosecutor did not give him the officer's dash cam video of the traffic stop before trial.

13

Ordinarily, we will not reverse a conviction unless the trial court makes a mistake. *Johnson v. State*, 169 S.W.3d 223, 228–29 (Tex. Crim. App. 2005). But in some cases, the prosecutor's misconduct can require reversal, like when the prosecutor suppresses exculpatory evidence. *Id.* at 229.

A prosecutor's duty to disclose exculpatory evidence stems from three sources: Subsection (h) of Article 39.14 of the Code of Criminal Procedure, Subsection (a) of that article, and the defendant's due-process right as set out in *Brady*.

Subsection (h) of Article 39.14 of the Code of Criminal Procedure creates an affirmative duty for the State to disclose "any exculpatory, impeachment, or mitigating document, item, or information in the possession, custody, or control of the [S]tate that tends to negate the guilt of the defendant or would tend to reduce the punishment for the offense charged." TEX. CODE CRIM. PROC. art. 39.14(h). Subsection (h) creates "an independent and continuing duty for prosecutors to disclose evidence that may be favorable to the defense." *Watkins v. State*, 619 S.W.3d 265, 277 (Tex. Crim. App. 2021). The State must disclose this type of evidence in its possession even without a request by the defendant. *See id.* Because the legislature did not limit Subsection (h) to material evidence, the State's duty to disclose under this article is broader than the duty to disclose under *Brady*. *Id.*

Any other evidence "that does not tend to negate guilt or mitigate punishment" must be disclosed on the defendant's request under Subsection (a) of Article 39.14. *Id.*; TEX. CODE CRIM. PROC. art. 39.14(a). Subsection (a) provides that, after a timely request by the defendant, the State "shall produce and permit the inspection and the electronic duplication" of "any offense reports, any designated documents, papers, written or recorded statements of the defendant or a witness" and "any designated books, accounts, letters, photographs, or objects or other tangible things" that: (1) are "not otherwise privileged"; (2) "constitute or contain evidence material to any matter involved in the action"; and (3) "are in the possession, custody, or control of the [S]tate." TEX. CODE CRIM. PROC. art. 39.14(a). In this context, "material" means "relevant." *Watkins*, 619 S.W.3d at 280. However, a defendant is not permitted to remove the documents, items, or information from the State's possession and may only inspect the evidence in the presence of a representative of the State. TEX. CODE CRIM. PROC. art. 39.14(a). Specifically, "[i]n the case of a pro se defendant," the State must permit the pro se defendant to inspect and review the evidence, but the State "is not required to allow electronic duplication" of the evidence. *Id.* art. 39.14(d).

Under constitutional due process, a prosecutor has a duty to disclose material, exculpatory information on the defendant's request. *See Brady*, 373 U.S. at 87. A *Brady* violation occurs when the State suppresses material evidence favorable to a

15

defendant. *See Harm v. State*, 183 S.W.3d 403, 406 (Tex. Crim. App. 2006). To establish reversible error due to a *Brady* violation, a defendant must show: (1) the State failed to disclose evidence; (2) the evidence is favorable to the defendant; and (3) the evidence is material, in this context meaning there is a reasonable probability that if the evidence had been disclosed, the outcome of the trial would have been different. *Pena v. State*, 353 S.W.3d 797, 809 (Tex. Crim. App. 2011). The "mere possibility" that certain evidence might have helped the defense does not establish the evidence is material in this context. *Lindsey v. State*, 582 S.W.3d 810, 821 (Tex. App.—Houston [14th Dist.] 2019, no pet.) (quoting *United States v. Agurs*, 427 U.S. 97, 109–10 (1976)); *see also Allen v. State*, 473 S.W.3d 426, 457 (Tex. App.—Houston [14th Dist.] 2015, pet. dism'd) (speculation about existence, contents, favorability, and usefulness of evidence does not establish *Brady* materiality). *Brady* only requires the prosecution to disclose information that is known to the State but not the defense. *See Pena*, 353 S.W.3d at 810. Therefore, *Brady* does not require the State to disclose evidence it does not have in its possession or that does not exist. *Id.* Nor does *Brady* require the State to disclose evidence the defendant is aware of or can access from other sources. *Id.*

Under all three of these sources, the State is only obligated to disclose evidence in its possession. *See id.*; TEX. CODE CRIM. PROC. art. 39.14(a), (h). Neither *Brady* nor Article 39.14 requires the State to seek out information for the defendant

or to create any document that does not already exist. *See Pena*, 353 S.W.3d at 810; *Coleman v. State*, 577 S.W.3d 623, 634–35 (Tex. App.—Fort Worth 2019, no pet.). The defendant has the burden to show the complained-of evidence was in the State's possession but withheld. *See Pena*, 353 S.W.3d at 809–10 (explaining *Brady* requires State to disclose evidence in its possession and defendant has burden to prove *Brady* violation); *Turpin v. State*, 606 S.W.2d 907, 915 (Tex. Crim. App. 1980) ("Where there is no showing . . . that the items sought are in the possession of the prosecution, the defendant is not entitled to relief on appeal."); *Lindsey*, 582 S.W.3d at 820 (explaining that to show violation of Article 39.14, appellant was required to show State had possession, custody, or control of requested evidence but failed to produce it).

### *Analysis*

Before trial, Mitchell filed a motion for discovery. He requested:

(1) any and all written or recorded statements of witnesses, statements, diagrams, or drawings made by the officer;

(2) a description of the type of radar used, the device serial number, and the date of last calibration;

(3) the location and position of the officer's vehicle on a map, and, if in motion, the location, speed and direction of the officer's vehicle in relation to Mitchell's vehicle at the time of the radar reading;

(4) the distance from Mitchell's car at which the radar evaluated his speed;

(5) proof of the officer's training and certification for operating the radar;

17

(6) documentary proof that the radar used to evaluate his speed met or exceeded the minimal operational standards of the National Highway Traffic Safety Administration and the Texas Department of Transportation and had had been calibrated within the manufacturer's required scheduled maintenance by a certified independent radar repair technician;

(7) the officer's employment records, including any complaints or disciplinary actions; and

(8) any photos or video of Mitchell or the alleged offense taken by the officer or his dash cam.

The record shows the trial court granted requests (1) and (5) conditionally, if responsive documents existed. The trial court granted request (8), but only as to photos of Mitchell. The trial court denied the other requests as "not appropriate."

Before trial began, the trial court asked Mitchell if he had any pretrial motions that needed rulings. Mitchell answered, "I requested discovery and got nothing." The trial court reviewed Mitchell's discovery requests and asked the prosecutor if any documents responsive to requests (1) and (5) existed, but she indicated there were none. The trial court explained, "So I granted (1) and (5), if they existed. They're telling me those don't exist—there isn't anything responsive to those. Okay. So there's nothing else I can do about that. You can ask the officer when—if the officer testifies, you can ask him if any of those things exist." Mitchell did not question the officer about the existence of any of these items.

Mitchell argues on appeal that he was not given any evidence to build his defense. But the State has no independent duty to seek out information for the

defendant. *See Pena*, 353 S.W.3d at 810; *Coleman*, 577 S.W.3d at 635. Except for the dash cam video, Mitchell has not met his burden to show any of the requested evidence existed or was in the State's possession, custody, or control. *See Pena*, 353 S.W.3d at 809–10; *Lindsey*, 582 S.W.3d at 820.

As for the dash cam video, the record shows the State did disclose the video to Mitchell. He acknowledged that he viewed the video before trial, just not to the point "where [he could] make heads or tails out of it," as he explained to the trial court. Because Mitchell was acting pro se, the State was not required to "allow electronic duplication" or give him a copy of the video. TEX. CODE CRIM. PROC. art. 39.14(d).

Before the State played the video at trial or formally admitted it into evidence, the trial court judge briefly left the courtroom to give Mitchell another opportunity to watch the video and make objections, if he had any. When the judge returned and asked Mitchell if he had any objections to the video, Mitchell said he did not. The State then played the video at trial, before the trial court judge.

Mitchell has not met his burden to show the requested evidence was in the State's possession, except for the dash cam video, which was disclosed to him. *See Pena*, 353 S.W.3d at 809–10; *Lindsey*, 582 S.W.3d at 820. On this record, we cannot say the State violated any duty to disclose evidence under Article 34.19(h), Article 34.19(a), or *Brady*. We therefore overrule Mitchell's third issue.

19

## Exclusion of Evidence

Lastly, we consider Mitchell's fourth issue, that the trial court erred in sustaining the State's objections to his evidence and not admitting the evidence.

### *Applicable Law*

To admit an item into evidence, the party seeking to admit the item "must produce evidence sufficient to support a finding that the item is what the [party] claims it is." TEX. R. EVID. 901(a); *see also Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012). This is known as authenticating or laying a foundation for the evidence. A trial court makes the preliminary determination of whether the party has provided sufficient facts to support a reasonable determination that the item is authentic. *Butler v. State*, 459 S.W.3d 595, 600 (Tex. Crim. App. 2015). We review a trial court's preliminary determination for an abuse of discretion. *Id.* We will not reverse the trial court's ruling if it is "within the zone of reasonable disagreement." *Id.*

The most common way to authenticate a photo or video is through a witness's testimony that the photo or video accurately represents the object or scene in question. *Standmire v. State*, 475 S.W.3d 336, 344 (Tex. App.—Waco 2014, pet. ref'd); *see also Huffman v. State*, 746 S.W.2d 212, 222 (Tex. Crim. App. 1988).

## *Analysis*

At trial, while questioning the officer, Mitchell offered two photos of speed limit signs into evidence, and the State objected because the photos did not properly show the location of the traffic stop and because Mitchell had not laid a proper foundation—meaning the photos had not been authenticated. The trial court explained, "[T]hey are saying you have improperly proved these up. . . . So you can try to do that through the officer, but you need pictures. These have your notes on them, I think." Mitchell asked for the photos to be returned so he could cut off the portions with his notes, but the trial court did not return the photos because they had already been offered. Mitchell said he could show the officer pictures on his phone, but the trial court said, "[I]t's got to be something that . . . we can admit. It can't be a cell phone."

When Mitchell offered the two photos with notes, he had not provided sufficient facts to support a determination that the photos were authentic. *See Butler*, 459 S.W.3d at 600. Therefore, the trial court did not abuse its discretion in excluding the evidence. *See id.*

Even if the trial court's ruling excluding the evidence had been in error, it would not be an error sufficient to reverse Mitchell's conviction. We cannot reverse a conviction for a ruling on evidence unless the error affects the appellant's "substantial rights." TEX. R. APP. P. 44.2(b); *Bleimeyer v. State*, 616 S.W.3d 234,

21

250–51 (Tex. App.—Houston [14th Dist.] 2021, no pet.); *see also Walters v. State*, 247 S.W.3d 204, 219 (Tex. Crim. App. 2007) (stating erroneous exclusion of evidence is generally non-constitutional error reviewed under Rule 44.2(b)).[3]

In this case, even if Mitchell's photos were authenticated and admitted and he established that the speed limit was in fact 50 miles per hour where the officer first saw him, the record shows there was still evidence indicating his guilt and supporting the verdict. There was evidence that Mitchell was driving 57 miles per hour. Regardless of whether the posted speed limit was 45 miles per hour or 50 miles per hour, there was evidence that Mitchell was driving faster than the posted speed limit. Thus, even if excluding the photos was error, Mitchell's substantial rights were not affected, so there is no *reversible* error. *See* TEX. R. APP. P. 44.2(b).

We overrule Mitchell's fourth issue.

## CONCLUSION

We affirm the trial court's judgment.

---

[3] An error affects an appellant's substantial rights if it has a "substantial and injurious effect or influence" in determining the verdict. *Stredic v. State*, 663 S.W.3d 646, 655 (Tex. Crim. App. 2022). An error does not affect an appellant's substantial rights if we have "fair assurance," after reviewing the entire record, that the error did not influence the verdict "or had but a slight effect." *Id.* at 655–56. To make this determination, we consider: "(1) the character of the alleged error and how it might be considered in connection with other evidence; (2) the nature of the evidence supporting the verdict; (3) the existence and degree of additional evidence indicating guilt; and (4) whether the State emphasized the complained of error." *Gonzalez v. State*, 544 S.W.3d 363, 373 (Tex. Crim. App. 2018).

                                        Gordon Goodman
                                        Justice

Panel consists of Justices Goodman, Rivas-Molloy, and Guerra.

Do not publish. TEX. R. APP. P. 47.2(b).